4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In the Matter of Rose K. THOMPSON and Janet E. Shill,
Debtors/Appellants.
 No. 92-2587.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 7, 1993.*
Decided Sept. 10, 1993.
 
 Before BAUER, Chief Judge, POSNER, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 We affirm for the reasons stated in the district court order, which is attached.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 In the matter of Rose K. Thompson, Debtor-Appellant
 
 
 3
 Patrick T. Murphy, Public Guardian of Cook County, and
 
 
 4
 Independent Administrator of the Estate of Joseph
 
 
 5
 Cunningham, and Office of the State Guardian, Guardian of
 
 
 6
 the Estate of Richard Cunningham, Plaintiffs-Appellees,
 
 
 7
 v.
 
 
 8
 Rose K. Thompson and Janet E. Shill, Defendants-Appellants.
 
 
 9
 In the matter of Janet E. Shill, Debtor-Appellant
 
 
 10
 Patrick T. Murphy, Public Guardian of Cook County, and
 
 
 11
 Independent Administrator of the Estate of Joseph
 
 
 12
 Cunningham, and Office of the State Guardian, Guardian of
 
 
 13
 the Estate of Richard Cunningham, Plaintiffs-Appellees
 
 
 14
 v.
 
 
 15
 Rose K. Thompson and Janet E. Shill, Defendants-Appellants.
 
 
 16
 Nos. 90 C 5180, 90 C 5181.
 
 MEMORANDUM OPINION AND ORDER
 
 17
 This is a bankruptcy appeal. Before the Court is the motion to dismiss the appeal of Rose Thompson and Janet Shill by Patrick Murphy, acting in his official capacity as Guardian of Cook County and Independent Administrator of the Estate of Joseph Cunningham, and the Office of the Illinois State Guardian, as Guardian of the Estate of Richard Cunningham ("the Guardians"). The Guardians move for dismissal of Thompson and Shill's appeal pursuant to Rule 8006 of the Bankruptcy Rules.[1] For the reasons stated below, the Guardians' motion to dismiss Thompson and Shill's appeal is granted.
 
 I. FACTS
 
 18
 The Court will give an abbreviated narration of the facts as taken from Bankruptcy Judge Ginsberg's memorandum opinion, dated August 1, 1990. See In re Thompson and Shill, No. 89 B 3151, slip op. at 4-19 (Bankr. August 1, 1990) [hereinafter Bankruptcy Opinion, at ----]. The Guardians represent the estates of Joseph Cunningham[2] and Richard Cunningham[3] (the "Cunninghams"). The Cunninghams owned a home at 3243 North Natchez Avenue, in Chicago, Illinois. Thompson and Shill purchased the Cunninghams' home in September of 1985. The sale of this home resulted in the Guardians' institution of legal proceedings against Thompson and Shill, proceedings which eventually found a forum in the bankruptcy court of this district.
 
 
 19
 Thompson and Shill were introduced to Richard Cunningham by Patrick O'Byrne in January of 1985. Joseph Cunningham was a patient in various nursing homes continuously from the winter of 1985 until his death in 1988. On February 16, 1985, a contract of sale for the Cunninghams' home was executed, by which the Cunninghams' agreed to sell the home to J & R Real Estate (Thompson and Shill's real estate partnership).[4] The bankruptcy judge stated:
 
 
 20
 [T]he February 16 transaction ... was a major step in a plan to defraud the Cunninghams out of their house. The price of $58,000 was well below the $71,000 to $86,000 value of the house. O'Byrne, as an attorney knew he could get in trouble buying property from a client, particularly one of questionable competence, at a price well below fair market value. Therefore, he got Rose and Janet to front for him. Either he would purchase the house as the real party in interest from J & R Real Estate, kicking back a "commission" to Rose and Janet, or they could buy the house from the Cunninghams at $58,000, resell it a fair market value, and split the profits.
 
 
 21
 In any case, O'Byrne, Rose and Janet knew they were entering into the February 16 agreement for their own benefit; Richard and Joseph did not. Over the next several months, Rose and Janet did little to market the house. They did not list it with any multiple listing services. They made no serious advertising efforts. They only showed the house to a few people they could trust, i.e. friends and relatives.
 
 
 22
 Bankruptcy Opinion, at 7 (footnote omitted). While the February 16 contract did not close, this did not dissuade Thompson and Shill. With the help of another attorney, Glenn Neuman, a second contract (styled a "net-up contract") was prepared in which the Cunninghams again agreed to sell their home to Thompson and Shill. The "net-up" contract provided that Thompson and Shill would pay the outstanding mortgage on the Cunninghams' home ($8,200), the costs of transferring title ($350 in transfer stamps, $850 in Torrens charges, $750 in real estate taxes and $700 to Neuman) and $14,925 in cash to the Cunninghams. Thus, Thompson and Shill paid $25,775 for the Cunninghams home which had a fair market value in excess of $71,000. Thompson and Shill also arranged for Richard to sell to them the entire contents of the home for $765. Having spent several thousand dollars improving the condition of the Cunninghams' former home, Thompson and Shill resold it for $89,500 in June of 1986.[5]
 
 
 23
 Following Joseph Cunningham's death in March, 1988, the Guardians instituted legal proceedings in Illinois state court to recover actual and punitive damages from Thompson and Shill. Thompson and Shill sought protection from the bankruptcy court by filing Chapter 7. The Guardians filed a timely complaint in bankruptcy court seeking a determination that the debts owed by Thompson and Shill were nondischargeable under 11 U.S.C. Secs. 523(a)(2), (4) & (6). The parties went to trial before the bankruptcy judge and a jury on the issues of dischargeability, liability and damages.[6] The jury found for the Guardians and awarded both actual and punitive damages. The bankruptcy judge accepted the jury's advisory verdict as to dischargeability and liability. The bankruptcy judge reduced the jury's award of actual damages, but left intact the jury's award of punitive damages.[7] The bankruptcy judge denied Thompson and Shill's post-trial motion for a new trial.
 
 
 24
 Thompson and Shill have appealed the bankruptcy judgment to this Court.[8] Thompson and Shill were represented by an attorney in the proceedings in the bankruptcy court. They are no longer represented by counsel and now appeal pro se.[9] Both moved for in forma pauperis standing. The question of in forma pauperis standing was remanded to the bankruptcy judge, who denied Thompson's application, but granted Shill's application on October 4, 1991. The Guardians have moved for dismissal of Thompson and Shill's appeal based upon Thompson and Shill's noncompliance with Bankruptcy Rule 8006.
 
 II. DISCUSSION
 Federal Bankruptcy Rule 8006 states:
 
 25
 Within 10 days after filing the notice of appeal as provided by Rule 8001(a) or entry of an order granting leave to appeal the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented.... The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgement order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court. Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated or, if the party fails to provide the copy, the clerk shall prepare the copy at the expense of the party. If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall immediately after filing the designation deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost. All parties shall take any other action necessary to enable the clerk to assemble and transmit the record.
 
 
 26
 Failure to comply with Rule 8006 is not jurisdictional, but such a failure may still be the basis for dismissal of an appeal. In re Crisp, 77 B.R. 215, 218 (W.D.Mo.1987); In re Duncan, 95 B.R. 672, 676 (Bankr.W.D.Mo.1988). The burden of providing the bankruptcy appellate court (which in this district is initially the district court) with an adequate record on appeal is squarely on the appellant. "Unless the record that is brought before the court affirmatively shows the occurrence of the matters upon which the appellant relies for relief, the appellant may not urge those matters on appeal." 9 LAWRENCE KING, COLLIER ON BANKRUPTCY p 8006.04 (1992) [hereinafter COLLIER ON BANKRUPTCY]; see also In re Ichinose, 946 F.2d 1169 (5th Cir.1991). An adequate designation of issues on appeal is also necessary to put the appellee on notice as to which issues it must defend against and whether the appellant's designation of issues will produce a record adequate for the appellate court. 9 COLLIER ON BANKRUPTCY p 8006.04.
 
 
 27
 A court may dismiss a bankruptcy appeal for failure to file a designation of record or statement of issues on appeal. In re Champion, 895 F.2d 490, 492 (8th Cir.1990). Failure to take the steps necessary to allow the clerk to transmit the record on appeal to the appellate court may also warrant dismissal. In re Fitzsimmons, 920 F.2d 1468, 1472 (9th Cir.1990) (corporation failed to serve designation of record within 10 day limit, failed to make written request for record and failed to post transcript fees for 8 months after filing appeal); see also Greco v. Stubenberg, 859 F.2d 1401 (9th Cir.1988) (district court's dismissal of bankruptcy appeal when appellant's counsel repeatedly failed to provide funds necessary to cover transcripts not an abuse of discretion).
 
 
 28
 When considering whether to dismiss an appeal, the Court must consider (1) whether alternative measures in lieu of dismissal are available and (2) whether the conduct giving rise to the dismissal was caused by the party's attorney. Greco, 859 F.2d at 1404. The court in In re Duncan found both of these conditions were fulfilled by a bankruptcy appellant's dilatory tactics, thus requiring dismissal. In re Duncan, 95 B.R. at 676. The Duncan appellants had been granted three extensions of time in which to adequately supply the record on appeal, by requesting the clerk of the bankruptcy court to forward the relevant transcripts to the district court. Instead, of complying with Rule 8006, the Duncan appellants filed documents and transcripts from their own files. The district court rejected this practice stating that the "copies of the record ... are without the assurance that they are the exact copies of what was initially filed with the Court." In re Duncan, 95 B.R. at 676; see also Sandra Cotton, Inc. v. Bank of New York, 87 B.R. 272, 273 (W.D.N.Y.1988) (three year passage of time between notice of appeal and the record still lacking a transcript required dismissal for failure to perfect appeal). Other courts have dismissed bankruptcy appeals for similar transgressions of Rule 8006. See, e.g., In re Benhil Shirt Shops, Inc., 82 B.R. 7 (S.D.N.Y1987) (dismissal warranted when debtor failed to serve timely issue statement, failed to file appeal brief, failed to request extension of time and failed to respond to motion to dismiss appeal); In re Colombian Coffee Co., 71 B.R. 258 (S.D.Fla.1987) (failure to file transcript); but see In re Beck-Rumbaugh Assocs., 80 B.R. 306 (E.D.Pa.1987) (dismissal not warranted for failure to request transcript of bankruptcy court hearing; court instead granted extension).
 
 
 29
 Appellants Thompson and Shill have failed in two major respects to perfect their appeal to this Court. First, despite almost one year of extensions,[10] Thompson and Shill have failed to file a statement of issues or designation of items to be included in the record which would inform this Court, much less the appellee Guardians, of what the record on appeal includes. Some of the issues stated by Thompson and Shill are personal attacks on the Cook County Guardian, Patrick Murphy, and appear to be frivolous. For instance, Thompson and Shill list as an issues that "Patrick Murphy used his political office as a lethal weapon to assault Janet Shill & Rose Thompson" and that "Janet Shill & Rose Thompson were not persons of equal standing in the community with Patrick Murphy. They are and were bankrupt at the time of trial, June, 1989. Patrick Murphy is the Public Guardian of Cook County, with political ambitions, notoriety and has unlimited resources and unlimited funds. (Taxpayer's monies)." Appellant's Statement of Issues on Appeal, at 2. Even if these issues were viable on appeal, Thompson and Shill have not provide any of the record from the bankruptcy proceedings which would provide a basis for such claims.
 
 
 30
 Other of Thompson and Shill's issues are unintelligible in that they consist of single sentences or phrases which give no notice of the issue being appealed. Thompson and Shill list as issues:
 
 
 31
 4. Inadequate Council [sic];
 
 
 32
 A. Inadequate witnesses.
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 6. Unjust encumbrances in various courts....
 
 
 36
 7. Negotiations & Settlements Attempted....
 
 8. Conflict of Interest:
 
 37
 A. Conflict of interest of attorneys....
 
 
 38
 B. Two Civil cases and one criminal case pending at the same time, initiated by Patrick Murphy, Cook County Guardian. (Heat & Pressure from all three cases at once.)....
 
 
 39
 Appellant's Statement of Issues on Appeal, at 3. In support of their statement of issues on appeal, Thompson and Shill have filed "Supplements" containing financial documents,[11] newspaper articles,[12] letters between Thompson and Shill and their attorneys[13] and self-prepared transcripts of the proceedings before the bankruptcy court.[14] None of these documents are stamped by the Clerk of the Bankruptcy Court and do not appear to have been part of the record before the bankruptcy court.[15]
 
 
 40
 Other of Thompson and Shill's stated issues on appeal do provide the Court with a glimmer of what issues the appellants wish to raise on appeal. For instance, Thompson and Shill raise the issue of improper instructions to the jury. Nevertheless, Thompson and Shill have failed to support this issue with any relevant portion of the record below. Thompson and Shill have failed to include in their designation of the record on appeal the jury instructions given or refused by the bankruptcy judge. Since Thompson and Shill have also failed to file an appellate brief, an issue which will be discussed below, the Court has no means of resolving this issue on appeal.
 
 
 41
 Thompson and Shill's appeal has second glaring deficiency. Thompson and Shill have yet to file an appellate brief. Bankruptcy Rule 8009 states: "Unless the district court ... by local rule or by order excuses the filing of briefs or specifies different time limits: (1) The appellant shall serve and file a brief within 15 days after entry of the appeal on the docket...." Thompson and Shill filed their Notice of Appeal on August 23, 1990. Under Rule 8009, Thompson and Shill's appellate briefs were due on September 7, 1990. Even if we were to consider the extensions that granted Thompson and Shill time to comply with Rule 8006 as to also extend the time for the filing of their appellate brief, Thompson and Shill would have still have had to comply with Rule 8009 by August 13, 1991.[16]
 
 
 42
 Similar to Rule 8006, the time limitations imposed by Rule 8009 are not jurisdictional and a court is not required to dismiss the appeal of a party who has failed to comply with Rule 8009. In re Tampa Chain Co., 835 F.2d 54, 55 (2d Cir.1987) (citing In re Beverly Manufacturing Corp., 778 F.2d 666 (11th Cir.1985)). In its discretion, a court may dismiss an appeal for failure to comply with Rule 8009 based upon a showing of bad faith, negligence, or indifference. In re Tampa Chain Co., 835 F.2d at 55-56 (affirming dismissal by district court after bankruptcy appellant failed to file a brief for seven months after due date); see also Lawless v. Central Prod. Credit Ass'n, 81 B.R. 475, 476-77 (S.D.Ill.1987) (following In re Beverly ).
 
 
 43
 The Court believes that the negligence and indifference of Thompson and Shill in perfecting their appeal requires dismissal of the appeal. Thompson and Shill's response to the Guardians' motion to dismiss displays their indifference to compliance with the rules. "Although their [sic] is no requirement that a party have the transcripts in their possession, before filing the required statemnt [sic] called for in rule 8006, it would be a fruitless endeavor, not to be able to produce and show the lies, convolutions, and nonsensical maneuvering and twisting of the facts, and circumstances, and circumstances and truths, and the lack of credibility ot [sic] the witnesses produced by Patrick Murphy, during the trial of June, 1989." Answer to Motion to Dismiss Appeal, at p 6. Instead of seeking to comply with the rules governing bankruptcy appeal, Thompson and Shill have consistently sought to delay the appeal's progress. When forced to comply with the rules regarding bankruptcy appeal, Thompson and Shill have consistently filed documents which are meaningless or incomprehensible to the Court. Because of the consistency of unintelligible documents filed, the Court views it unlikely that yet another extension time to Thompson and Shill would cure these defects. Dismissal of Thompson and Shill's appeal, while harsh, is warranted in this case because they have been the chief architects in bringing what amounts to a legal nullity as a appeal. Moreover, almost two years have passed since the bankruptcy court entered judgment declaring Thompson and Shill's debts nondischargeable. The Guardians, and the estates they serve, would be ill-served by granting Thompson and Shill more time in which to cloud an already murky record. Bankruptcy Rule 8001 states in relevant part: "Failure of an appellant to take any steps other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court ... deems appropriate, which may include dismissal of the appeal." Accordingly, we dismiss the appeal of Rose K. Thompson and Janet E. Shill for failure to comply with Rule 8006 and 8009.
 
 III. CONCLUSION
 
 44
 The appeal of Rose K. Thompson and Janet E. Shill from the bankruptcy court's judgment and order is DISMISSED.
 
 Date: JUN 01 1992
 
 45
 ------------/s/ JAMES H. ALESIA
 
 
 46
 ------------United States District Judge
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 The Guardians also moved pursuant to Bankruptcy Rule 8001 to dismiss Thompson and Shill's appeal as untimely filed. The Guardians have withdrawn this motion
 
 
 [2]
 Joseph Cunningham is deceased
 
 
 [3]
 Richard Cunningham is psychologically disabled and a ward of the State of Illinois
 
 
 [4]
 The bankruptcy judge notes here that Thompson claimed at trial that the contract was a listing agreement. Curiously, Thompson and Shill were not affiliated with a multiple listing realtor and the contract called for a $2,000 earnest money payment
 
 
 [5]
 Following the sale of the home by the Cunninghams to Thompson and Shill, Thompson and Shill assumed the role of Richard Cunningham's financial manager and advisor. For this "service", Thompson and Shill charged Richard Cunningham $90.00 per hour. The bankruptcy judge commented on this aspect of the case:
 Janet said they put Richard on a budget. What else they did for his benefit is far from clear. According to Janet's testimony they found Richard an apartment and charged him for their services in so doing. However, it was in their interest to get him out of the house. They moved him into the apartment and charged him for doing so. They also claim credit for getting Richard a job, although the record to [sic] clear that Janet's son simply pointed him in the right direction. Their financial and other services didn't do Richard much good. Ultimately he lost his job, was evicted from the apartment and had his few remaining belongings put out on the sidewalk where he lost most of them to an uncaring public. Some of the rest of the belongings wound up in Janet's possession.
 Bankruptcy Opinion, at 16-17. Thompson and Shill's "professional services" to Richard Cunningham eventually totalled more than $3,000.
 
 
 [6]
 The parties stipulated to the adversary proceeding being tried to a jury. The parties further stipulated that the jury verdict on the dischargeability question would be advisory only, with the ultimate decision on dischargeability to be determined by the bankruptcy judge. If the debts were found to be nondischargeable, the jury's verdict on the issues of actual and punitive damages would be binding
 
 
 [7]
 As reduced, the verdict was in the amount of: Actual damages--$39,506.60 in favor of Richard Cunningham and $32,027.50 in favor of the Estate of Joseph Cunningham, to be jointly and severally awarded against Shill and Thompson; and punitive damages--$70,000.00 in favor of both Cunninghams, to be jointly and severally awarded against Shill and Thompson
 
 
 [8]
 Originally, Shill's appeal was before another judge of this district. The Court took Shill's appeal as a related case pursuant to United States District Court for the Northern District of Illinois Local Rule 2.31
 
 
 [9]
 Pro se litigants' pleadings are entitled to a less strict construction than that accorded the pleadings of litigants represented by counsel. Cf. Haines v. Kerner, 404 U.S. 519, 520, reh'g denied, 405 U.S. 948 (1972). The Court has applied this less stringent standard when reviewing the filings of Thompson and Shill. We note for the record, however, Thompson and Shill appear to be intelligent and capable of managing an intricate real estate transaction. Shill has a B.A. degree from DePaul University and spent 8 months as a trainee with the Internal Revenue Service. Shill had a real estate license and an insurance license in Illinois for more than 17 years. Thompson, while not having the educational and business background of Shill, assisted Shill in their real estate business venture
 Thompson and Shill have adroitly protracted the time limits for filing under the bankruptcy rules by means of extensions and continuances. Their deft management of the filing dates belies claims of inexperience with the legal process.
 
 
 [10]
 Thompson and Shill filed their Notice of Appeal on August 23, 1990. On September 6, 1990, the day on which compliance with Rule 8006 was required, Thompson and Shill filed a motion for extension of time to comply with Rule 8006. The motion was denied by the bankruptcy judge without prejudice. On October 18, 1990, Thompson and Shill filed their second motion for an extension of time to comply with Rule 8006. This motion was entered and continued by the bankruptcy judge and eventually heard on December 10, 1990. On December 10, 1990, the bankruptcy judge granted Thompson and Shill a 60-day extension to comply with Rule 8006. On February 19, 1991, Thompson and Shill filed their third motion for extension of time to comply with Rule 8006. The bankruptcy judge entered and continued the motion until March 1, 1991, at which time the bankruptcy judge granted Thompson and Shill an additional 90-day extension to comply with Rule 8006. On May 30, 1991, Thompson and Shill filed their fourth motion for extension of time to comply with Rule 8006. The bankruptcy judge granted Thompson and Shill an additional 30-day extension to comply with Rule 8006. On June 28, 1991, Thompson and Shill filed their fifth motion for extension of time to comply with Rule 8006. On June 28, 1991, the bankruptcy judge granted a final 30-day extension of time to comply with Rule 8006. On July 19, 1991, Thompson and Shill filed their sixth motion for extension of time to comply with Rule 8006. This motion was denied on July 19, 1991. Thompson and Shill filed their notice of compliance with Rule 8006 on July 29, 1991, almost one year after filing their notice of appeal
 
 
 [11]
 See Appellants' Supplement A, at 3-12 [hereinafter SPA, at ----]. These financial records are for the most part hand-written. None of these documents are stamped by the Clerk of the Bankruptcy Court
 
 
 [12]
 See SPA, at 16-17. It is not clear if this article was ever admitted into evidence before the bankruptcy judge
 
 
 [13]
 See SPA, at 27-28. These letters do not appear to have been part of the record before the bankruptcy court
 
 
 [14]
 See SPA, at 34, 38-40; Appellants' Supplement C, at 1-11 [hereinafter SPC, at ----]. Obviously, hand-prepared transcripts are inherently unreliable and will not be considered by a court on appeal. See In re Duncan, 95 B.R. at 676. Moreover, Thompson and Shill's transcripts are much more than a verbatim record of the proceedings before the bankruptcy court. Thompson and Shill's transcript provide running commentary to the witness's testimony:
 Page 2-Lnes [sic] 20-24; Do you believe Detective Edison? Again a neutral person who has no state in the outcome of this case, who comes in and swears under oath that Janet Shill told me that Patrick O'Byrne called Rose Thompson and said that the deal is off.
 Response; Janet Shill said that Patrick O'Byrne called her, about two weeks after she and Rose Thompson purchased Natchez, and said that Jan and Rose were in trouble with the Guardian's office. Perhaps Detective Edison misunderstood!
 Page 2-Lines 24 & 25; That's the crux of the case. Once Patrick O'Byrne, Attorney, calls, and O'Byrne is a slimeball, who's in it for himself, he is a rat that saw the ship sinking and scurried down the boat and got off.
 Response; Patrick O'Byrne was Patrick Murphy's star witness, whom he has just discredited. Patrick O'Byrne got immunity from Patrick Murphy, and lied in his testimony on the stand!
 The Court finds it difficult to determine which portion of this quoted "transcript" is in fact transcription (even if second hand) and which portion is commentary by Thompson and Shill. Given the clear unreliability of these self-serving transcripts, the Court will not accept them as being in compliance with Rule 8006.
 
 
 [15]
 Shill's record on appeal does contain a certified transcript of the proceedings before Judge Ginsberg during which the Thompson's and Shill's in forma pauperis status was determined. The relationship of that hearing to their present appeal mystifies the Court
 
 
 [16]
 Thompson and Shill filed their notice of compliance with Rule 8006 on July 29, 1991