In re William J. ARNOLD, III, and Nonie Arnold, Debtors.

William J. Arnold, III and Nonie Arnold, Appellants,

v.

David A. Gill, Chapter 7 Trustee, Appellee.

BAP No. CC–99–1480–MOPB.

Bankruptcy No. LA 96–15706–BR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 19, 2000.

Decided Aug. 16, 2000.

William J. Arnold, III and Nonie Arnold, Corona, CA, Pro se Appellants.

Robert A. Hessling, Danning, Gill, Diamond & Kollitz, Los Angeles, CA, for Ch. 7 Trustee.

Before MONTALI, PERRIS and BRANDT, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

In this case we explain the clear difference between two alternative grounds for disallowance of debtors' untimely claim of exemptions: bad faith, and prejudice to third parties. We stress the need for concrete evidence of bad faith, and reiterate that delay alone is not bad faith, and that prejudice, once ameliorated, is not a basis to deny a claim of exemption.

Debtors William J. Arnold, III ("William Arnold") and Nonie Arnold (collectively, the "Arnolds") amended their Schedules B and C to include a state court·personal injury action, which was settled for $200,000 by the Arnolds' Chapter 7 trustee, David A. Gill (the "Trustee"). Finding nothing in the record to support either bad faith due to the Arnolds' delay in claiming this exemption or prejudice to third parties, we hold that the Trustee has shown no basis to disallow the Arnolds' amendment to their exemptions. Accordingly, we REVERSE and REMAND.

## I. FACTS

On July 20, 1994 William Arnold was severely injured by a falling door at his place of business. On February 21, 1995 he filed an action in the Superior Court of California, County of Los Angeles, entitled *William J. Arnold, III v. Pacific Corporate Towers, et al.* (Case No. YC020302) (the "State Court Action"), alleging that the acts and omissions of the defendants therein contributed materially to his personal injuries. William Arnold was represented by counsel in the State Court Action (the "PI Counsel").

On February 23, 1996 the Arnolds filed their joint Chapter 7 petition.[1] The State Court Action was not included among the assets they claimed as exempt on Schedule C, nor among their personal property assets listed on Schedule B. It was listed in the Arnolds' Statement of Financial Affairs as follows:

Lawsuits involving non-creditors:

**Arnold v. Pacific Towers, LA Superior Court–Torrance Branch**

**Case # YC020302–Pending**[2] (Emphasis in original.)

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and all rule references are to the Federal Rules of Bankruptcy Procedure. The "Schedules" and "Statement of Financial Affairs" are Official Bankruptcy Forms 6 and 7.

2. The Arnolds claim their failure to list the State Court Action on Schedules B and C was their attorney's fault, not their own. They claim that before filing their petition they fully discussed the State Court Action with their bankruptcy attorney, and told him that the PI Counsel valued it in excess of $1,000,000, out of which they intended to pay all creditors in full.

The Arnolds cite nothing in the record to support these assertions, and although most of their arguments on appeal concern the alleged errors and malfeasance of their counsel, there is no evidence these arguments were ever presented to the bankruptcy court. Instead, they submitted a new declaration directly to this panel, as a preface to their "Supplemental Excerpts of Record" filed on May 10, 2000.

Arguments not presented to the bankruptcy court are not properly before us. Such arguments are not addressed in this opinion.

The Arnolds appear *pro se* on this appeal. *Pro se* appellants are accorded some leeway, but cannot ignore the Code and Rules, and the rules of this court. *Matter of Thompson*, 140 B.R. 979, 982–985 & n. 9 (N.D.Ill.1992) (dismissing *pro se* debtors' appeal for failure to provide record, *inter alia*), *aff'd*, 4 F.3d 997 (7th Cir.1993).

The Arnolds also assert, and the Trustee does not deny, that they were questioned by the Trustee about the State Court Action at their Section 341(a) meeting of creditors.

Over a year later, effective June 1, 1997, the Trustee obtained the bankruptcy court's approval to retain the PI Counsel on a contingency basis, as special counsel to prosecute the State Court Action for the Chapter 7 estate. The Arnolds filed no objection to the estate's employment of the PI Counsel, nor did they amend their Schedules B and C at that time.

In late 1998, the Trustee negotiated a $200,000 settlement with the defendants in the State Court Action, subject to bankruptcy court approval. The Trustee also negotiated compromises with claimants who asserted $142,413.10 in medical liens against the settlement proceeds, reducing the total to $45,234.26. The Trustee asserts that he invested substantial time in arranging the settlement and compromises.

On March 31, 1999, the Arnolds amended their Schedules B and C.[3] The amendment to Schedule B identified the State Court Action. The amendment to Schedule C claimed it as exempt under California Code of Civil Procedure Section 704.140(a), (b) and (c).[4]

As of the same date the Trustee had not yet executed the settlement agreement with the defendants in the State Court Action, nor was it fully executed by those defendants, but the Trustee states and the Arnolds do not deny that they were present at the settlement conference where the agreement in principle was reached. In other words, the Arnolds knew of the $200,000 settlement. Their amended Schedule C lists the amount of their exemption as $200,000.

On April 28, 1999 the Trustee filed an objection to the Arnolds' amended exemption, arguing that it should be disallowed on grounds of bad faith and prejudice. According to the Trustee, bad faith is "established by the timing of the amendment more than three years after the filing date and almost five months after I reached the [$200,000] settlement with the [defendants in the State Court Action]." The Trustee

---

3. The Arnolds offer several explanations for their failure to amend their Schedules B and C earlier. There is no evidence they presented these explanations to the bankruptcy court, and therefore they are not properly before this panel. However, for the sake of completeness they can be summarized as follows.

When the Trustee sought and obtained approval to retain the PI Counsel, William Arnold alleges he raised strenuous objections with the PI Counsel that they should not "simultaneously represent the Trustee."The PI Counsel allegedly held themselves out as having bankruptcy expertise and told the Arnolds they "saw no problems." The Arnolds claim they could not locate their bankruptcy attorney and were induced not to object because, among other things, the PI Counsel assured them that "the wording of both the [b]ankruptcy [d]ocuments and any judgment or settlement in the State Court Action would be designed to preserve a significant share in such funds for the future medical needs and support of [the Arnolds]."

The Arnolds state that it was only after this settlement was a *fait accompli* that they learned the Trustee "owned" the State Court Action, rather than merely having a "lien" on the proceeds, and that the Trustee had the power to settle it at his own discretion and exclude the Arnolds from receiving any of the settlement proceeds. The Arnolds then contacted fifteen bankruptcy attorneys to take over their case and explain how the Trustee could settle the State Court Action without their consent. The last of these attorneys "explained that the problem was [the Arnolds' bankruptcy attorney] had failed to include exemptions in the Schedules."

4. California Code of Civil Procedure Section 704.140 provides, in part:

§ 704.140. Personal injury causes of action, damages or settlement; exemption; exception; periodic payment

(a) Except as provided in Article 5 (commencing with Section 708.410) of Chapter 6, a cause of action for personal injury is exempt without making a claim.

(b) Except as provided in subdivisions (c) and (d), an award of damages or a settlement arising out of personal injury is exempt to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor.

argued that the "amendment prejudices creditors because it defeats their expectations with respect to the claims and causes of action and the settlement proceeds."

Alternatively, the Trustee argued that if the bankruptcy court were inclined to allow the amended exemption, the allowance should be conditioned upon payment of the fees and costs of the Trustee and the PI Counsel. The Trustee did not object to the merits of the Arnolds' amended exemption.[5]

On May 25, 1999 the Arnolds filed an opposition, in which they claimed that until the time they amended their Schedules B and C they "did not realize the lawsuit was an asset of the estates and the schedules should be amended." The Trustee thereafter filed a reply.

On May 27, 1999 the Trustee noticed and filed a motion for an order approving the $200,000 settlement with the defendants in the State Court Action and the compromises with the medical lien claimants. Nothing in the Trustee's notice or motion informed creditors of the Arnolds' amended claim of exemption in the settlement proceeds. Rather, the motion stated that it appears the settlement and compromises "will enable me to make a distribution to unsecured creditors." The Arnolds filed an objection to the motion contending, among other things, that the settlement amount was too low.

At a hearing on July 19, 1999 the bankruptcy court approved the settlement and disallowed the Arnolds' amended exemption. The bankruptcy court acknowledged that the "passage of time is not enough" to disallow an amendment, but did not believe that the Arnolds' omission of the State Court Action from their Schedules B and C was "just an accident," and stated that it was "buried in the statement of affairs" where it "could have easily slipped by."[6]

■ On July 28, 1999 the Arnolds filed a notice of appeal from the bankruptcy court's oral rulings.[7] On August 6, 1999 the oral rulings were entered as written orders. On August 13, 1999 the Arnolds filed an amended notice of appeal from the order approving the $200,000 settlement and the order disallowing their amended exemption.[8]

■ At oral argument the Trustee's counsel advised the panel that there may be no funds left in the estate after allowance of his and his counsel's fees and costs. However, the Arnolds responded that on remand they could seek an order from the bankruptcy court staying distribution or disgorging those fees.[9]

5. At oral argument, the Trustee's counsel conceded he had no objection to the merits of the Arnolds' amended exemptions, except to the extent, if any, he could prove that the proceeds of the State Court Action would be greater than necessary for the support of the Arnolds and any dependents. We express no opinion whether the Trustee has preserved this issue and could argue it to the bankruptcy court on remand.

6. Of course, as noted above, the Trustee was aware of the State Court Action by the time of the meeting of creditors. Its existence certainly did not slip by.

7. A notice of appeal filed after announcement of a decision or order but before entry of a written order is treated as having been filed after such entry and on the day thereof. Rule 8002(a). *See Franchise Tax Board v. Lapin (In re Lapin)*, 226 B.R. 637, 641 (9th Cir. BAP 1998) (describing intent of Rule 8002(a) and treating appeal as timely in analogous situation).

8. On January 25, 2000 the Trustee filed a motion to dismiss the Arnolds' appeal from the order approving the settlement (BAP No. CC–99–1527). The Trustee argued that that appeal was moot, because among other things the State Court Action had been dismissed with prejudice. On March 30, 2000 a panel of this court granted the Trustee's motion.

9. Because it appears the Arnolds may have a remedy, their appeal is not moot. *In re Osborn*, 24 F.3d 1199, 1203–1205 (10th Cir.), *rehearing denied* (1994) (no mootness where constructive trust theory could create fund against which exemptions could be asserted).

## II. STATEMENT OF THE ISSUE

Whether the bankruptcy court erred in disallowing the amended exemptions.

## III. STANDARD OF REVIEW

 The Bankruptcy Appellate Panel reviews legal issues de novo and the bankruptcy court's factual findings under a clearly erroneous standard. *See Village Nurseries v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 409 (9th Cir. BAP 1999). The bankruptcy court has no discretion to disallow amended exemptions, unless the amendment has been made in bad faith or prejudices third parties. *Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir.1998); *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982); *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988). Questions regarding the right of a debtor to claim exemptions are questions of law subject to *de novo* review, whereas the issue of a debtor's intent is a question of fact reviewed under the clearly erroneous standard. *Coughlin v. Cataldo (In re Cataldo)*, 224 B.R. 426, 428–429 (9th Cir. BAP 1998); *Szymanski v. Herzog (In re Szymanski)*, 189 B.R. 5, 6–7 (N.D.Ill. 1995). In this case, the Trustee has not challenged the legal sufficiency or basis of Appellants' exemptions; rather, he is alleging that their bad faith and prejudicial conduct precludes them from amending their exemptions when they did. Therefore, any findings by the bankruptcy court on bad faith or prejudice are reviewed for clear error.

## IV. DISCUSSION

### A. Jurisdiction

 A bankruptcy court's order denying a claim of exemption is a final, appealable order. *Preblich v. Battley*, 181 F.3d 1048, 1055–56 (9th Cir.1999). In *Preblich*, the exemption claim was denied under substantive state exemption law. In this case, however, the Arnolds' amendment to their

exemptions was disallowed on the grounds of bad faith or prejudice to the creditors. Nevertheless, that order—like an order denying an exemption for reasons based in state exemption law—"finally determines the discrete matter to which it was addressed." *Id.* Consequently, the rule set forth by the Ninth Circuit in *Preblich* applies. The Bankruptcy Appellate Panel has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and (b).

### B. Amendments to Bankruptcy Schedules

 As the Trustee acknowledges, Rule 1009(a) states that debtors may amend their schedules "as a matter of course" at any time before the case is closed. *See Michael, supra*, 163 F.3d at 529; *Magallanes, supra*, 96 B.R. at 255–56. The rule is liberal, but is subject to some judge-made exceptions:

> Amendments are and should be liberally allowed at any time absent a showing of **bad faith or prejudice** to third parties. *In re White*, 61 B.R. 388, 394 (Bkrtcy.W.D.Wash.1986); *[In re] Andermahr*, 30 B.R. [532] 533 [9th Cir. BAP 1983]. Exceptional circumstances, however, may prevent a debtor from amending his petition or schedules. *Tignor [v. Parkinson]*, 729 F.2d [977] at 979 [4th Cir.1984] [*overruled on other grounds as stated in In re Sherman*, 191 B.R. 654, 657 n. 3 (Bankr.E.D.Va.1995) ]; *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982) (bad faith by debtor or prejudice to creditors might bar amendment).

*Magallanes*, 96 B.R. at 256 (emphasis added).

 It is not entirely clear whether bad faith or prejudice must be shown by a "preponderance of the evidence" or "clear and convincing" evidence. However, we need not decide the issue. Under either standard, we hold below that the record contains insufficient evidence to support a finding of bad faith or prejudice.[10]

10. "Proof by the preponderance of the evidence means that it is sufficient to persuade

■ On the issue of "prejudice" to third parties, there is an additional requirement. "[M]erely showing prejudice" does not automatically trigger disallowance of an amendment: the court must balance the prejudice to the debtor of disallowing the exemption against the prejudice to third parties in allowing the exemption. *Brown, supra,* 56 B.R. at 958 and n. 11 (involving amendment to debts, not exemptions, but interpreting *Doan* ); *In re Osborn,* 24 F.3d 1199, 1205–06 (10th Cir.), *rehearing denied* (1994) (applying *Brown*'s balancing approach in exemption context); *Barrett v. Commonwealth Federal Sav. and Loan Ass'n,* 111 B.R. 78, 81 (E.D.Pa.1990) (same).

The Trustee argues that the bankruptcy court disallowed the Arnolds' amended exemptions on the basis of both "bad faith" and "prejudice." The court's written order does not specify its grounds, and the July 19, 1999 transcript suggests it was based on "bad faith" alone. Nevertheless, because the basis for the bankruptcy court's decision is not entirely clear, and because we could sustain the order on either ground (*In re Canino,* 185 B.R. 584, 594 (9th Cir. BAP 1995)), we will review both issues.

## C. Bad Faith

■ The usual ground for a finding of "bad faith" is the debtor's attempt to hide assets. The rationale for this judge-made "bad faith" exception to Rule 1009(a)'s liberal policy of amendments is:

> [A]lthough amendments before discharge are liberally allowed ... [the debtors'] omissions from the initial list suggest that they meant to hide assets if they could get away with it. ... The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended

the finder of fact that the proposition is more likely true than not. Clear and convincing evidence is a higher standard requiring a high probability of success." *In re Arnold and Baker Farms,* 177 B.R. 648, 654 (9th Cir. BAP 1994) (citations omitted), *aff'd* 85 F.3d 1415 (9th Cir.1996), *cert. denied sub nom. Arnold and Baker Farms v. U.S.,* 519 U.S. 1054, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997).

The court in *Magallanes* applied the "clear and convincing" standard:
> A mere allegation of bad faith, though, is insufficient; bad faith must be established by clear and convincing evidence. *In re Brown,* 56 B.R. 954, 958 (Bkrtcy.E.D.Mich. 1986). This standard allows the party alleging bad faith an opportunity to prove his or her claim, but also implements the policy of liberally allowing the debtors to amend their exemption claims in order to enhance their fresh start.

*Magallanes,* 96 B.R. at 256 (emphasis added).

Several courts have held that prejudice, like bad faith, must be shown by "clear and convincing" evidence. *In re Yonikus,* 996 F.2d 866, 872 (7th Cir.1993); *Brown, supra,* 56 B.R. at 958 and n. 10; *Kobaly v. Slone (In re Kobaly),* 142 B.R. 743, 748 (Bankr.W.D.Pa. 1992). *Cf. In re Robbins,* 187 B.R. 400, 403 (Bankr.D.Mass.1995) (citing *Kobaly* but, perhaps mistakenly, reversing the burden of proof, stating that as the finder of fact the court therein had to find by clear and convincing evidence that there is "no prejudice" to the estate by the amendment to exemptions).

However, the burden of proof may have been affected by the Supreme Court's decision three years after *Magallanes* in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In *Grogan,* the Court ruled that a "preponderance of the evidence" standard applied to a nondischargeability action under Section 523(a)(2). Following in *Grogan*'s footsteps, this court has applied a "preponderance of the evidence" standard to deny a Chapter 7 debtor's discharge for concealing a bank account, even though he had amended his Schedules B and C to include the bank account. *Beauchamp v. Hoose (In re Beauchamp),* 236 B.R. 727, 730 (9th Cir. BAP 1999). These holdings could lead to a seemingly anomalous result: if the creditor in *Beauchamp* had objected to the debtor's amended Schedule C, but could not show concealment of the bank account by "clear and convincing" evidence, the exemption might have been allowed; but the same debtor would later be denied *any* Chapter 7 discharge, because the creditor proved the debtor's intent to conceal the bank account by a "preponderance of the evidence."

We need not decide if these holdings are inconsistent. As noted in the text, we reverse under either standard.

claim once caught, cheating would be altogether too attractive.

*Yonikus, supra,* 996 F.2d at 872, *quoting Payne v. Wood,* 775 F.2d 202, 205 (7th Cir.1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

At oral argument before the bankruptcy court the Trustee's counsel stated "the main factor here is prejudice," and did not explicitly argue "bad faith." However, the Trustee did argue that William Arnold was a Harvard Law School graduate, and that the Arnolds had an affirmative duty under Section 521(1) to prepare their bankruptcy schedules carefully, completely and accurately. The Arnolds responded that William Arnold "never practiced law," that "many attorneys are not familiar with all the bankruptcy laws," that the Arnolds listed the State Court Action in their Statement of Financial Affairs, and that they were questioned about that action at the Section 341(a) meeting of creditors.

The bankruptcy court stated that the disclosure was "buried in the statement of affairs" where it "could have easily slipped by." Moreover, the bankruptcy court did not believe that the Arnolds' omission of the State Court Action from their Schedules B and C was "just an accident," and rejected William Arnold's claim that he "didn't know that this was an asset."

However, the Statement of Financial Affairs lists the State Court Action, under "Lawsuits involving non-creditors," with William Arnold as plaintiff, and with the notation "Pending." The Trustee does not contest that he recognized this as an asset, and questioned the Arnolds about it at the Section 341(a) meeting. Therefore, giving due regard to the bankruptcy court's assessment of William Arnold's credibility, and accepting that he knew the State Court Action was an asset, the record still cannot support a finding that the Arnolds intended to hide this asset. Thus, the finding of "bad faith" cannot be sustained on this ground. *See Kobaly, supra,* 142 B.R. at 749 (debtor's disclosure at meeting of creditors of existence of eminent domain proceeding negated any allegation that debtor attempted to conceal asset by not disclosing its existence in his petition).

As an alternative ground, the Trustee's written objection argued that bad faith is "established by the timing of the amendment more than three years after the filing date and almost five months after I reached the settlements with the [defendants in the State Court Action]." The Trustee confuses bad faith with allegedly prejudicial delay, which we address below. By itself, claiming an exemption late is simply not bad faith.

We do not hold that there can be no grounds for "bad faith" other than the debtor's intent to hide an asset; but no other grounds were presented in this case. For example, the panel recognizes that there could be bad faith if the debtor intentionally stood by while the estate risked the cost of litigating a possible recovery, and only stepped in to claim an exemption after the estate was successful. In such circumstances, the debtor would be shifting the risk of funding the litigation to the estate, and playing a game of "heads I win, tails you lose." As with hiding assets, such intentional behavior may be a good reason to disallow an amendment to Schedule C.

However, those are not the facts of this case. The Trustee's agreement with the PI Counsel was for a contingency fee, and PI Counsel agreed to waive its costs to the extent the eventual judgment or settlement of the State Court Action turned out to be insufficient to pay those costs. Thus, there is no evidence the debtor was shifting any risk to the estate.

Therefore, there is no basis on the record to sustain the bankruptcy court's finding of bad faith. That finding was clearly erroneous.

## D. Prejudice to Creditors

As this court has held:

Simple delay in filing an amendment where, as here, the case is not closed does not alone prejudice creditors. Nor does prejudice to creditors occur merely because a claimed exemption, if held timely, would be granted.

*Andermahr, supra,* 30 B.R. at 534.

■ Prejudice to creditors is clearly present where they suffer an actual economic loss due to a debtor's delay in claiming his exemption. Such prejudice existed in *Grzesnikowski v. Shaffer (In re Shaffer),* 92 B.R. 632, 635 (Bankr.E.D.Pa.1988), where one creditor did not object to previous distributions of funds to the debtors because he expected his claim to be paid out of assets that the debtors had not originally claimed as exempt. Unlike *Shaffer,* however, the record in this case does not indicate that any creditor would have acted differently had it known of the full extent of the Arnolds' claimed exemptions. Moreover, according to the docket and transcripts, no creditor filed any objection to the amended exemptions or appeared at the hearings to allege any actual prejudice.

Nevertheless, a number of cases have based a finding of prejudice on two factors present in the Arnolds' case: the considerable delay in filing the amended schedules and a trustee's investment of considerable time and effort to prosecute and settle a claim that constituted the object of the exemption. As discussed below, however, these cases do not support a finding of prejudice on the facts of this case as set forth in the record.

In *In re Bowman,* 1996 WL 529233 (Bankr.D.Md.1996), the court's finding of prejudice was *dicta;* it had already disallowed the exemptions as a matter of state exemption law. The court noted that—apart from the efforts of the trustee and his lawyer—"substantial judicial resources were devoted to resolving issues that would not have required resolution if the debtor had promptly claimed the exemption." *Bowman,* 1996 WL 529233 at *2. This quotation alludes to prior published rulings of the court with respect to the settlement of the litigation which the debtors thereafter claimed as exempt. *See In re Bowman,* 181 B.R. 836 (Bankr.D.Md. 1995). In its later decision, the *Bowman* court did not explain how this waste of judicial resources prejudiced the creditors, but in any case there is no showing here that the combined judicial resources of the bankruptcy court and the state court would have been used any less if the Arnolds, rather than the Trustee, had litigated and settled the State Court Action.

Other courts have held that disappointment of creditors' expectations supports a finding of prejudice to creditors. *See Szymanski,* 189 B.R. at 7; *In re Fournier,* 169 B.R. 282, 284 (Bankr.D.Conn.1994). In *Szymanski,* the debtor did not claim his exemption until after the trustee had noticed and obtained court approval of a settlement of that action. The *Szymanski* court therefore held that the amended exemptions defeated the expectation of creditors, and thus prejudiced them. This holding is distinguishable because here the Arnolds claimed an exemption before the Trustee noticed and the bankruptcy court approved the settlement. In any event, the panel disagrees with *Szymanski* to the extent it holds that some theoretical disappointment of expectations, without proof of actual damage, can constitute actual prejudice.

The court in *In re Jelinek,* 97 B.R. 429, 432–33 (Bankr.N.D.Ill.1989), relies almost entirely on the debtor's inordinate delay in amending the schedules in finding prejudice to creditors. This ruling is inconsistent with the widely accepted rule that simple delay in filing an amendment does not alone prejudice creditors. *Michael,* 163 F.3d at 529; *Doan,* 672 F.2d at 833; *Fournier,* 169 B.R. at 284; *In re Blaise,* 116 B.R. 398, 400 (Bankr.D.Vt.1990).

The court in *In re Cudeyro,* 213 B.R. 910 (Bankr.E.D.Pa.1997), based its finding of prejudice on, *inter alia,* debtor's at-

tempt "to undo her stipulation with the trustee." *Id.* at 914. No such stipulation exists in this case.[11]

■ As the foregoing discussion demonstrates, the cases cited by Trustee are distinguishable, or are not persuasive. The panel recognizes that there could be prejudice to creditors if the Trustee or his counsel had to be paid out of assets that would otherwise go to creditors. But as set forth below, the Trustee and counsel can be paid from the proceeds of the $200,000 settlement.

At oral argument the Trustee's counsel claimed that if he had known of the Arnolds' exemption claim, which was for exactly $200,000, he might have held out for a higher settlement. But the Arnolds amended their exemptions before the Trustee executed the $200,000 settlement, and before he sought and obtained the bankruptcy court's approval of the settlement and compromises with medical lien claimants.

Therefore, the record here does not support a finding of prejudice to creditors based on the Arnolds' delay in claiming the proper exemption, and the Exemption Order cannot be sustained on this basis.

### E. Prejudice to the Trustee, and Litigation Fees and Costs

■ The Trustee argues that if the Arnolds' amended exemption is approved, he will lose the opportunity to receive his fees allowable under 11 U.S.C. § 326, which are based on "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor. . . ." The Trustee calculates his maximum allowable fees as $13,250, based on the settlement proceeds of $200,000, and states that his costs are $119.50.[12]

Moreover, as the Trustee argued, the PI Counsel have earned fees and incurred costs. Neither the PI Counsel nor the estate should be prejudiced, and the PI Counsel should be paid out of the proceeds of the State Court Action.[13]

Here the Trustee asked that if the bankruptcy court were inclined to allow the amended exemptions, such allowance be conditioned on payment of administrative expenses, including his fees up to the $13,250 maximum. Thus by the Trustee's own suggestion any prejudice to the Trustee, and any prejudice arising from the PI Counsel's fees and costs, could have been and still can be remedied.

The same is true for the any allowable fees and costs of the Trustee's counsel on

---

11. The *Cudeyro* court also followed *Jelinek*, which we decline to follow, and earlier cases that are no longer good law. *Id.* at 920–922, citing *In re Brewer*, 17 B.R. 186 (Bankr. M.D.Tenn.), *aff'd*, 22 B.R. 983 (M.D.Tenn. 1982) (construing the debtor's amendment of exemptions to be an "objection" subject to the fifteen day limit of former Rule 403), *overruled by Lucius v. McLemore*, 741 F.2d 125, 126–127 (6th Cir.1984), *as recognized by Fournier, supra*, 169 B.R. at 284 n. 3; *In re Duggan*, 4 B.R. 709, 711 (Bankr.N.D.Tex.1980) (same fifteen day limit); *In re Korff*, 14 B.R. 189, 193–194 (Bankr.E.D.Mich.1981) (same); *In re Snow*, 21 B.R. 598, 600 (Bankr.E.D.Cal. 1982), *appeal untimely*, 23 B.R. 655 (Bankr. E.D.Cal.1982) (decided before *Magallanes*, and not assessing prejudice, but instead applying a rule that, once insurance proceeds were received by trustee, creditors' rights "attached," and subsequent amendment to exemptions was invalid).

12. We emphasize that the $13,250 is a maximum fee under Section 326, not an entitlement. The bankruptcy court must decide the proper amount of the Trustee's compensation under Section 330.

13. In his objection to the Arnolds' amended Schedule C, the Trustee calculated PI Counsel's fees as $54,274.71 plus costs. The bankruptcy court's docket reflects that the PI Counsel's fees have been allowed in the amount of $66,666.67 plus costs. At oral argument the Trustee suggested that the higher figure was justified using a revised calculation, but the panel was unable to arrive at the higher figure on this basis. We express no opinion what figure the bankruptcy court should use in protecting the PI Counsel from prejudice, nor do we express any opinion whether the Arnolds have waived any objection to the higher figure.

this appeal, and before the bankruptcy court, concerning the Arnolds' exemptions. In other words, it appears the bankruptcy court could have conditioned the allowance of the amended exemptions so as to prevent any prejudice to third parties. .

A number of courts have recognized the possibility of prejudice to the trustee, and the possible prejudice from litigation costs. *Fournier,* 169 B.R. at 284; *Blaise,* 116 B.R. at 400–02; *In re Myatt,* 101 B.R. 197 (Bankr.E.D.Cal.1989); *Roberts v. Harris (In re Harris),* 101 B.R. 210 (Bankr. E.D.Cal.1989); *In re Selman,* 7 B.R. 889 (Bankr.D.N.M.1980). However, as all but the earliest of these five cases suggest, any such prejudice can be mitigated or eliminated by conditioning allowance of the amended exemption on payment of the trustee's and counsel's fees and costs from assets not otherwise available to the estate.

It is not equitable to disallow the exemption under such circumstances. If there is no further prejudice to creditors or other third parties, the amended exemptions must be allowed.

Therefore, this panel will remand this matter to the bankruptcy court for a determination of the appropriate amount of fees and costs to which Trustee and his counsel are entitled for their services. Such amounts as the bankruptcy court determines to be reasonable, and that were incurred based on the reasonable expectation that the estate would receive the proceeds of the State Court Action, should be paid out of the proceeds of the State Court Action in order to avoid any prejudice to Trustee or other third parties.

In summary, there is no basis in the record for disallowing the Arnolds' amendment to their exemptions based on actual prejudice, nor based on bad faith. The bankruptcy court's order disallowing the Arnolds' amended Schedule C exemption cannot be sustained on either ground.

## V. CONCLUSION

We REVERSE the bankruptcy court's order disallowing the Arnolds' amended exemption, and we REMAND for the bankruptcy court to determine the allowable amount of such exemption under California Code of Civil Procedure Section 704.140, subject to provisions conditioning such allowance on payment of reasonable fees and costs incurred by the Trustee and his counsel based on the reasonable expectation that the estate would receive the proceeds of the State Court Action.