**In re Karl D. HARRIS and Mary M. Harris, Debtors.**

**Bankruptcy No. 89–06580–B13.**

United States Bankruptcy Court, S.D. California.

Sept. 26, 1990.

Gerald H. Davis, San Diego Debt Reorganization & Bankruptcy Ctr., San Diego, Cal., for debtors.

Jerry Michael Suppa, San Diego, Cal., for Chrysler First Financial, etc.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Chapter 13 trustee, Harry W. Heid ("trustee"), objects to the classification of the claim of Chrysler First Financial Services ("Chrysler") on the ground that the claim is unsecured, and that their alleged lien is voided by the debtors' § 522(f) election.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

## FACTS

On October 12, 1987, debtors executed an installment contract and security agree-ment, in the principal amount of $3,550, in favor of Natural Energy Development for the purchase of three collectors, one controller, and one solar storage tank ("solar water heating system"), and for the installation of the system. The total sales price, including a finance charge of $1,601.60, · amounted to $5,151.60. Debtors were to make monthly payments of $85.86 for sixty months.

Thereafter, the agreement was assigned to Chrysler. By virtue of said agreement, Chrysler acquired a security interest in the solar water heating system. A UCC–1 financing statement was recorded with the San Diego County Recorder on October 27, 1987, in favor of Chrysler.

Debtors filed their voluntary petition under chapter 13 of Title 11 of the United States Code on August 24, 1989. Debtors' plan proposed 100% payment of claims held by unsecured creditors. Debtors scheduled Chrysler's claim as secured in the amount of $4,012, and described the claim as a judicial lien arising out of San Diego Municipal Court Case No. 86126.

On October 10, 1989, the chapter 13 trustee filed his "Notice Determining Classification of Creditors Claim" seeking to classify Chrysler's claim as unsecured in the amount of $3,948.76.

In Chrysler's initial opposition to the classification of claim, Chrysler argued that its claim was secured in the amount of $4,591.76 by virtue of the security agreement and the UCC–1 filing.

At the hearing on Chrysler's opposition to classification on March 14, 1990, the Honorable George Brody continued the matter and requested supplemental briefing on "the issue of whether the solar water heating system was a fixture and why the proper valuation should be based upon the value of the real estate to which the system became affixed." Chrysler's Supplemental Points and Authorities in support of Opposition 2:20–22, filed April 19, 1990.

In Chrysler's first supplemental points and authorities, Chrysler argues that the solar water heating system is a fixture by

virtue of the intention of the parties, and the manner in which the system was affixed to the real property. Chrysler further argues, without authority, that where Chrysler has properly recorded its interest in a fixture against the debtors' real property, Chrysler is entitled to enforce its lien against the value of the realty.

At the continued hearing on June 6, 1990, this court advised the parties that the debtors' schedules revealed that Chrysler had obtained a pre-petition judgment lien against the debtors' real property. The court then requested the parties to provide supplemental points and authorities regarding whether Chrysler's security interest had merged into the judgment lien by virtue of Chrysler's election to obtain a money judgment against the debtors. The parties were also directed to file a stipulation regarding the recordation of an Abstract of Judgment. No such stipulation has been filed, although Chrysler did file a copy of the Abstract of Judgment recorded on April 27, 1989, with the San Diego County Recorder. Further, the parties were given an opportunity to file additional evidence regarding the value of the real property.

## DISCUSSION

■ Prior to the filing of debtors' petition, Chrysler obtained a judicial lien by virtue of a money judgment it obtained against the debtors after they defaulted on their agreement. Trustee argues that pursuant to California Civil Code[1] § 1812.2, the holder of an installment contract is given an election of remedies to either recover judgment for the balance due or retake the goods.

In reply, Chrysler contends that the agreement is a home solicitation contract as defined by CC § 1689.5 *et seq.* and argues that as a home solicitation contract, CC § 1689.8(b) allows the seller to collateralize a home solicitation contract with a lien against real property. As such, Chrysler contends the Article 9 provisions of the California Commercial Code governing secured transactions would fix the rights and remedies of the parties upon default.

A close examination of the applicable California Civil Code sections reveals that Chrysler's argument is without merit, as CC § 1689.5 *et seq.*, which governs home solicitation contracts, is subject to the provisions of CC § 1801 *et seq.*

Civil Code § 1689.8(a) provides that:

Each home solicitation contract or offer for home improvement goods or services which provides for a lien on real property is subject to the provisions of Chapter 1 (commencing with Section 1801) of Title 2 of Part 4 of Division 3.

Home improvement goods are those bought in connection with the improvement of real property, and include heating equipment which may be so affixed to real property as to become a part of real property whether or not severable therefrom. CC § 1689.8(b).

Any distinction between a home solicitation contract involving home improvement goods and a retail installment contract is therefore rendered meaningless. The provisions of CC § 1801 *et seq.* must apply.

California Civil Code § 1801 *et seq.*, known as the "Unruh Act", governs retail installment sales and contracts involving consumers. A retail installment contract is defined as including any contract for a retail installment sale between a buyer and a seller which provides for (a) repayment in installments, whether or not such contract contains a title retention provision, and in which the buyer agrees to pay a finance charge, or (b) which provides for payment in more than four installments. CC § 1802.6. Debtors were required to make 60 monthly installments and pay a finance charge pursuant to the subject agreement.

Of particular interest is CC § 1812.2, a part of the Unruh Act (Chapter 1 of Title 2 of Part 4 of Division 3) made applicable by CC 1689.8(a) to home solicitation contracts. Section 1812.2 deals with a default by the buyer under an installment contract and the rights of the holder of such contract. The issue which arises then is whether under CC § 1812.2 Chrysler's security agreement and consensual lien on the solar

---

1. All references to California Civil Code Sections shall hereafter be designated "CC".

146

water heating system are now merged into a money judgment since Chrysler elected to recover a money judgment prior to the bankruptcy filing.

*CC § 1812.2—Merger:*

■ The trustee, in his points and authorities in support of his classification of the claim as unsecured, correctly points out that CC § 1812.2 gives the creditor the *election* to *either* recover judgment for the balance due *or* retake the goods.[2] Thus, pursuant to CC § 1812.2, Chrysler's security agreement and consensual lien on the solar water heating system are now merged into the money judgment. Since Chrysler elected to obtain a money judgment, any claim it holds retains a secured status only through the recording of the Abstract of Judgment.

Although a number of courts have given the secured party freedom to pursue its remedies without regard to an election, courts in this circuit have held the secured party to an election of remedies. In *In re Maldonado*, 46 B.R. 497 (9th Cir. BAP 1984), the Bankruptcy Appellate Panel ("BAP") made it clear that California opted for an election of remedies by holding that "California's Unruh Act creates an election of remedies so that a creditor loses all significant rights in the collateral by obtaining judgment for the value" of the security. *Id.* at 498.

In *Maldonado*, the debtor failed to make payments for carpeting it purchased. Seller obtained a state court judgment for the unpaid balance. Later, after the debtor

filed a Chapter 13 case, seller submitted a secured claim for the value of the collateral.

The BAP held that there was a binding election when seller obtained its purchase price judgment, and therefore seller no longer had any rights to the carpeting. *Id.* at 498. The BAP noted that since California law prohibited enforcement of the seller's lien (by virtue of section 1812.2), the claim could not be classified as secured. However, there was not a judicial lien involved as there is here.

The BAP also noted that this provision, for a binding election of remedies (either judgment or repossession), is contrary to the general California law under the Uniform Commercial Code. However, the BAP approved of this deviation and explained:

> California's Unruh Act (Cal.Civ.Code sections 1801 et seq.) was designed to correct abusive practices and to protect the consumer in retail sales of consumer goods and services. *Id.* at 498.

Consequently, Chrysler's discussion of the effects of California Commercial Code section 9501 is totally irrelevant. Chrysler maintains that the remedies provided by § 9501 are cumulative.[3] However, Chrysler ignores *Maldonado* and its rationale; namely, that California courts have opted for an election of remedies, regardless of any contrary Commercial Code provision, in order to give the consumer added protection.[4]

2. CC § 1812.2 provides in pertinent part:
   In the event of any default by the buyer in the performance of his obligations under a contract or installment account, the holder, pursuant to any rights granted therein, may proceed to recover judgment for the balance due without retaking the goods, *or* he may retake the goods and proceed as hereinafter provided. (emphasis added)

3. California Commercial Code § 9501 provides in pertinent part:
   (1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this chapter and except as limited by subdivision (3) those provided in the security agreement. The secured party may reduce his or her claim to judgment, foreclose or otherwise enforce the se-

curity interest by any available judicial procedure.... The rights and remedies referred to in this subdivision are cumulative.

4. *Maldonado*, citing 3 Cal.Cont.Ed.Bar, California Commercial Law, § 6.11 (1966), explains:
   The apparent purpose of this deviation is: ... to protect consumers further in retail installment sales transactions. The price obtainable on resale of repossessed chattels (other than motor vehicles) is often so low that when the costs of repossession and sale are added to the deficiency remaining after the sale, the consumer might find himself not only losing the chattel but also owing almost as much as the original price of the goods. In barring deficiency judgments, the Unruh Act protects the consumer against it. *Maldonado*, 46 B.R. at 498.

This issue of whether a creditor retains a secured status after obtaining a money judgment was also addressed in *In re Egbe*, 107 B.R. 711 (9th Cir. BAP 1989). In *Egbe*, the creditor obtained a money judgment in state court after the debtor defaulted on a car loan. The debtor subsequently filed a Chapter 13 bankruptcy petition and listed the debt as unsecured.

The *Egbe* panel determined that, under the particular circumstances, the pre-petition money judgment did not deprive the creditor its secured status in the Chapter 13 proceeding. *Egbe* noted that the California Commercial Code provided for cumulative remedies, but that this cumulative aspect of the section controls *only* where the state action is brought under an act which has no provision for the election of remedies. Thus *Egbe* distinguished itself from *Maldonado* in this regard. The BAP explained that in *Maldonado*, the Unruh Act, which governs consumer goods and services, specifically created an election of remedies. In contrast, the Rees–Levering Act, which governs installment sales of motor vehicles, has no provision for the election of remedies. Accordingly, the common law doctrine of election of remedies was inapplicable in *Egbe*. The BAP reaffirmed the continued vitality of *Maldonado* by stating that a creditor with security in consumer goods or services contracts loses all significant rights in its collateral by obtaining judgment for the value of the collateral. *Egbe* at 713.

*Egbe* also held that the terms of the specific conditional sales contract were of vital importance in determining whether the doctrine of election of remedies was properly invoked. The instant action is further distinguishable from *Egbe* because in *Egbe*, the security agreement itself provided for cumulative remedies.[5] However, *Maldonado* holds that despite any provisions in the contract to the contrary, in contracts subject to the provisions of the Unruh Act there is a binding election when a money judgment is obtained. *Maldonado*, at 498.

A buyer is afforded special protection when entering into a home solicitation contract. It is consistent with such legislative intent that the election of remedies provisions contained in the Unruh Act be applicable to home solicitation contracts. When Chrysler obtained a money judgment, it made a binding election to forego its secured status in the solar water heating system. Chrysler no longer holds a purchase money lien in the solar water heating system.

Chrysler chose to pursue a money judgment, and has lost its secured status in the goods, and real property, except as to any rights it obtained upon the recordation of the Abstract of Judgment. To hold otherwise would defeat the special protection afforded consumers by the California Legislature through the Unruh Act. Therefore, we need not turn to the fixture issue.

*Lien Avoidance:*

■ By electing to proceed to a money judgment, Chrysler waived its rights to the solar water heating system. However Chrysler did obtain certain rights based upon the recording of an Abstract of Judgment based upon its money judgment. A judicial lien was created against the debtors' real property[6].

11 U.S.C. § 522(f)(1) provides that a debtor may avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled. Here, the debtors pursuant to paragraph 5 of their Chapter 13 plan elected to avoid the fixing of liens on their property.

■ The BAP, in the recent decision *In re Galvan*, 110 B.R. 446 (9th Cir. BAP 1990), set forth the procedure for establishing whether a particular judicial lien is avoidable. First, the court must determine whether the debtor would have been entitled to claim an exemption in the absence of the lien, since exemptions are available

---

5. Chrysler has made no showing that its agreement provided for cumulative remedies.

6. 11 U.S.C. § 101(32) defines a judicial lien as a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

only to the extent that the debtor possesses equity in the property sought to be exempted. *Id.* at 450. To do this, the court must calculate the extent to which the debtor would possess equity in the absence of the judicial lien at issue. *Id.*

Equity is determined by deducting the security interests in the property sought to be exempted (exclusive of the judicial lien at issue and the unsecured interests, if any, which are junior in priority to the judicial lien) from the value of such property. *Id.* The value of the property is determined at the time of the filing. *In re Seyfert,* 97 B.R. 590 (Bankr.S.D.Cal. 1989). The exemption available for use by the debtor is equal to the lesser of (1) the equity of the debtor in the property sought to be exempted or (2) the maximum value of the exemption claimed. *Galvan,* 110 B.R. at 450.

The second step is to determine the extent to which the available exemption is impaired by the judicial lien. This requires that the court:

> [S]ubtract the allowed amount of the judicial lien from the equity determined to exist.... If after subtracting the lien from such equity there remains a property interest which is greater in value than the available exemption, no impairment exists. If the deduction leaves equity which is less than the available exemption, impairment arises to the extent of the deficiency. If no equity remains, impairment of the available exemption is complete. *Id.*

The judicial lien is avoidable to the extent to which the judicial lien is determined to impair the available exemption. *Id.*

Debtors valued the real property, at the time of the filing of the petition, at $123,000 encumbered by a first trust deed in the amount of $82,000 and property taxes of $1,379. Debtors claimed an exemption pursuant to California Code of Civil Procedure sections 704.730 and 704.910 in the amount of $41,000. Chrysler submitted the declaration of Karen Turner, a managing employee of Chrysler, alleging that the fair market of the real property was between $145,000 and $155,000. This valuation was based upon a property profile, and a sales market analysis prepared by Fidelity National Title Insurance Company ordered by Chrysler on June 12, 1990.

Exemption rights are fixed as of the date of the petition. *In re Whitman,* 106 B.R. 654 (Bankr.S.D.Cal.1989), *In re Seyfert, supra.* Therefore, it is important to know the value of the real property at the time of the filing of the petition. The only evidence before the court in this regard is the debtors' allegation of fair market value contained in their schedules. The valuation alleged by Chrysler is for the time frame after June 1990. The Turner declaration does not state that the valuation alleged was that existing at the time of the filing of the petition. Further, Chrysler has not qualified Ms. Turner as a competent witness regarding her testimony as to value.

The fair market value of the real property at the time of the filing of the petition was $123,000. The equity in the property is $39,621 as shown below:

| | |
|---|---|
| Fair Market Value | $123,000 |
| First Trust Deed | −82,000 |
| Property taxes | −1,379 |
| Equity | $39,621 |

As calculated by *Galvan, supra,* the available exemption is equal to the lesser of the equity of the debtor in the property sought to be exempted, or the maximum value of the exemption claimed. In this case the lesser sum is the equity in the amount of $39,621 which is the available exemption.

To determine the extent to which the available exemption is impaired by the judicial lien, this court must subtract the allowed amount of the judicial lien from the equity as shown below:

| | |
|---|---|
| Equity | $39,621 |
| Judicial lien | −4,012 |
| Net equity | $35,609 |

Since the deduction leaves equity which is less than the available exemption, impairment arises to the extent of the deficiency. To the extent of the impairment, Chrysler's judicial lien is avoidable, in this case the

full amount of their judicial lien is avoided pursuant to paragraph 5 of debtors' plan.

## CONCLUSION

Chrysler elected to obtain a money judgment based upon debtors' default of the installment contract. As a result of the binding election, Chrysler no longer has any rights to the solar water heating system. The resulting judicial lien is avoided through debtors' Chapter 13 plan. Chrysler's claim therefore shall be classified as unsecured in the amount of $4,012.46, the amount of the money judgment.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The trustee is directed to file with this court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.