**In re Eric Alan OSTER and Dana Sandridge Oster, Debtors.**

No. 99–60414–B–7.

United States Bankruptcy Court,
E.D. California,
Fresno Division.

May 6, 2003.

Thomas H. Armstrong, Fresno, CA, for Eric Alan Oster and Dana Sandridge Oster.

Darcey L. Wong, San Francisco, CA, for Phoenix Leasing Inc.

## MEMORANDUM OPINION

W. RICHARD LEE, Bankruptcy Judge.

In this opinion, the court addresses the question of whether Chapter 7 debtors may amend their exemptions under 11 U.S.C. § 522(b) to add a new exemption of previously scheduled property, after their case has been closed, and then move to avoid a prepetition judgment lien against that property pursuant to 11 U.S.C. § 522(f)(1) on the grounds that the judgment lien impairs the new exemption. It is the court's conclusion that they may not.

This motion to avoid the judgment lien of Phoenix Leasing Incorporated ("Phoenix") was heard on February 19, 2003 (the "Motion"). Thomas H. Armstrong, Esq., of the Law Office of Thomas H. Armstrong appeared for Eric and Dana Oster (the "Debtors"). Jennifer S. Coleman, Esq., of Jeffer, Mangels, Butler & Marmaro LLP appeared on behalf of Phoenix in opposition to the Motion. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 522.[1] This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B), (K) & (O). This Memorandum Opinion contains the court's findings of fact and conclusions of law. For the reasons set forth below, the Debtors' motion to avoid the judgment lien of Phoenix Leasing will be denied.

### Background.

In September 1999, Phoenix obtained a civil judgment against the Debtors in the Marin County Superior Court in the amount of $155,869.90. Phoenix promptly recorded an abstract of judgment in the records of Mariposa County where the Debtors live (the "Judgment Lien") and it became a lien against the Debtors' residence (the "Residence").[2]

---

1. Unless otherwise noted, all references to the Code are to the United States Bankruptcy Code. All references to the Rules are to the Federal Rules of Bankruptcy Procedure.

2. Based on the schedules, the Debtors did not have any other real property to which the Judgment Lien could attach. The record does not reveal whether the Debtors had previously recorded a Homestead Declaration pursuant to California Code of Civil Procedure § 704.910 et. seq.

This bankruptcy was filed as a voluntary Chapter 7 in November 1999. The Debtors listed the Residence on their schedule of real property and listed "Phoenix Financial" on Schedule D as a secured creditor pursuant to a "1997 Security Agreement" against "Business machinery, fixtures, equipment and supplies." Schedule D does not list the Judgment Lien as a lien against the Residence, but it includes a vague notation "Property to be surrendered. *Judgment lien to be avoided pursuant to 11 U.S.C. Section 522(f)*." (emphasis added). However, the Debtors did not include the Residence on their schedule of exempt property and no action was taken to amend the exemptions, or to avoid the Judgment Lien prior to closure of the case.

The Chapter 7 trustee filed a Report of No Distribution in February 2000, and the Debtors' discharge was entered in March 2000. The Final Decree was entered and the case was closed in March 2001, after the conclusion of an unrelated adversary proceeding.

The case was reopened on January 6, 2003, upon ex parte application made pursuant to Code § 350(b). On January 22, 2003, the Debtors filed this Motion to avoid the Judgement Lien pursuant to Code § 522(f)(1). The Motion is supported by a declaration of Eric Oster which states in pertinent part that: the Residence had a value of $175,000 at the commencement of the case, the unavoidable liens totaled $175,200 and the equity in the Residence did not exceed $15,800.[3]

Phoenix opposed the Motion on the grounds, *inter alia*, that the Debtors failed to claim the Residence as exempt, that they have waived that right, and that the Debtors may not exempt over-encumbered property.[4] In reply, on February 12, the Debtors filed an Amended Schedule C claiming an exemption in the Residence pursuant to Cal.Code of Civ. Proc. § 703.140(b)(1) in the amount of $8,688.

*Analysis.*

■ The difficulty here arises from the Debtors' interpretation of Code § 522(f). Resolution of this issue begins with the language of the statute. Statutory construction of the Bankruptcy Code is a "holistic endeavor."

> A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (internal citations omitted).

■ Where the statute's language is plain, " 'the sole function of the courts is to enforce it according to its terms.' " *United States v. Ron Pair Enters.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

---

**3.** California has "opted out" of the federal bankruptcy exemption scheme. Debtors must choose between the homestead exemptions under either Cal.Code of Civ. Proc. § 704.710, et. seq. or § 703.140. Under the latter exemption scheme, at the time this bankruptcy commenced, the Debtors could also combine the amounts available under § 703.140 subsections (b)(1) & (5) for a total

"grub stake" exemption of $15,800 applicable to *any property*.

**4.** Phoenix also objected that it did not receive notice of the ex parte application to reopen the case. However, there is no requirement that a motion to reopen be noticed to creditors. *See In re Menk*, 241 B.R. 896, 915 (9th Cir. BAP 1999).

■ Pursuant to section 522(f)(1), a debtor may avoid the fixing of a judicial lien against property "to the extent that such lien impairs *an exemption to which the debtor would have been entitled under [11 U.S.C. § 522] subsection (b) . . . .*" (emphasis added). The determination of "impairment" is based on the value of the "exempt" property at the petition date. *E.g., In re Harris,* 120 B.R. 142, 148 (Bankr.S.D.Cal.1990). The exemption is impaired if the value of the property is less than the total of the disputed lien, all other liens, and the exemption itself. Code § 522(f)(2)(A).[5] In other words, the exemption is impaired if the avoidable lien reduces any equity that the debtor could exempt in the property without the avoidable lien.

■ The debtor must file a list of property that the debtor claims as exempt. Unless a party in interest timely objects, the exemption is allowed. Code § 522(*l* ). The objecting party has the burden of proof to show that the exemption is not properly claimed. Rule 4003(c). However, in the lien avoidance context, the court has an independent obligation to examine the validity of the exemption claim even if the exemption has been "allowed" by default. *See In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Cal.1992).

■ Here, Phoenix unquestionably holds a "judicial lien" for purposes of sec-

tion 522(f)(1). The Judgment Lien impairs the equity in the Debtors' Residence according to the formula set forth in section 522(f)(2)(A), based on the value of the Residence on the petition date. The remedy under section 522(f)(1) may be exercised at any time, even after the case has been closed and reopened, absent actual prejudice to the creditor, to protect an exemption that was properly claimed. *In re Dodge,* 138 B.R. 602, 607 (Bankr.E.D.Cal. 1992). The remedy under section 522(f)(1) may be exercised even if the subject property is over-encumbered and there is no equity to exempt at the commencement of the case. *In re Higgins,* 201 B.R. 965, 967–68 (9th Cir. BAP 1996) (holding debtors entitled to protect an exemption of $1 in over-encumbered real property). With the proper exemption in place, it appears that the Debtors would now be entitled to avoid the Judgment Lien against their Residence. The pivotal issue, therefore, is whether the Debtors were entitled to amend their schedule of exemptions to claim a new exemption against the Residence after their case was closed.[6]

***The Debtors May Not Add New Exemptions After the Case is Closed Because the Estate No Longer Exists and 11 U.S.C. Section 522(b) Has No Application.***

■ The language of section 522(f) "is not ambiguous and does not permit a lien

---

5. Section 522(f)(2)(A) provides in pertinent part:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

6. The court is not deciding here whether a debtor may amend or correct a timely claimed exemption after the case has been closed, if that relief (1) is necessary to carry out the intent of section 522(f) and (2) does not prejudice a creditor that had prior notice of the exemption. There is a fundamental difference between the correction of a timely exemption and the untimely addition of a new exemption.

to be avoided unless there is entitlement to exemption under section 522(b)." *Mohring*, 142 B.R. at 394. A debtor's right to claim an exemption of property arises under Code § 522(b) which provides in pertinent part:

> (b) Notwithstanding section 541 of this title, an individual debtor *may exempt from property of the estate* the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—
>
> . . .
>
> (2) (A) any property that is exempt under Federal law ... or State or local law that is applicable on the date of the filing of the petition .... (emphasis added).

■ The concept of an "exemption" under section 522(b) has a specific application that relates by its own terms, to "property of the estate." The bankruptcy estate includes all of the interests in property, legal and equitable, possessed by the debtor at the commencement of the case, and it automatically springs into existence upon the filing of the petition. Code § 541(a). In Chapter 7, property of the estate is collected and administered by the Chapter 7 trustee. Code § 704. The case is closed after the estate has been fully administered and the court has discharged the trustee. Code § 350(a). Closure of the case affects the "estate" in three significant ways: the trustee no longer has any authority over property of the estate, *all scheduled property of the estate not administered by the trustee is abandoned to the debtor* (Code § 554(c)) and the estate *ceases to exist. See Bass v. Denney, (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999).

■ The exemptions allowed under section 522(b) operate to protect certain properties from administration by the trustee during the case. As Justice Scalia observed in a dispute over the application of Florida's homestead exemption law:

> Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c). No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted.

*Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

■ Here, the Residence was originally property of the estate, but it was not "within the estate" at the time the Debtors amended their exemptions to include the Residence. Once the Debtors' interest in the Residence was abandoned to the Debtors, it was no longer "possessed by the estate." Once the case closes, and the estate ceases to exist, section 522(b) ceases to have any meaning or application to the scheduled property. There is nothing in the Bankruptcy Code which suggests that a new exemption may be claimed for scheduled property after closure of the case.[7]

■ The Debtors argue that the phrase in section 522(f) "to which the debtor would have been entitled under subsection (b)" should be liberally interpreted to allow the post-closing addition of any ex-

---

**7.** Property which was not disclosed on the bankruptcy schedules is not abandoned at the closure of the case. Consequently, it may be subject to exemption if the case is subsequently reopened to administer the newly discovered property. *In re Boyd*, 243 B.R. 756 (N.D.Cal.2000).

emption that *could have been claimed* under section 522(b) during the pendency of the bankruptcy case but, for some reason, was not. However, the court cannot determine if the Debtors "would have been entitled" to exempt the Residence if they did not claim that exemption and give notice to the parties in interest when it was appropriate to do so. The Debtors argue, in essence, that section 522(f) creates an alternative and independent bases to claim an exemption solely for lien avoidance purposes. However, section 522(f) is expressly linked to section 522(b) which, in turn, is linked to the existence of a bankruptcy estate. Taken to its extreme, the Debtors' argument suggests that the entire exemption scheme may be augmented or completely changed, at any time after the case is closed, to suit a particular purpose arising under section 522(f). The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not support that interpretation.

The term "would have been entitled" relates not to the timing of the exemption, but to the calculation of exemptible equity in relation to the lien which the Debtors seek to avoid. The phrase "would have been entitled" was interpreted in *Owen*, 500 U.S. at 310–11, 111 S.Ct. 1833, as follows:

> To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself. As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)—which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "*is* entitled," but one to which he "*would have been entitled.*" The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than

actual, and requires the reader to disregard some element of reality. "Would have been" *but for what?* The answer given, with respect to the federal exemptions, has been *but for the lien at issue,* and that seems to us correct (footnote omitted).

Prior to the 1994 Bankruptcy Amendments, there was some confusion over the interpretation of section 522(f) and the calculation of "impairment." Congress resolved the ambiguity with the addition of subsection 522(f)(2)(A). It is clear from the language of subsection 522(f)(2)(A) that the term "would have been entitled" relates to the impairment issue. It does not contemplate that the debtor may add new exemptions after the case is closed.

Finally, the Debtors argue that the relief they seek is consistent with the Bankruptcy Code's "fresh start" policy. However, the "fresh start" policy is embodied within the plain language of the Code itself. The Ninth Circuit observed in *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1439–40 (9th Cir. 1993), that a "fresh start" is not the only consideration, and that it must be balanced against other factors:

> It cannot be overemphasized that we deal here with matters that are absolutely fundamental to the integrity of the Bankruptcy Code: the balance struck between the rights of creditors on the one hand, and the policy of affording the debtor a fresh start on the other. How to strike that balance is an inordinately difficult question—a question of public policy—as to which reasonable minds may and quite frequently do differ. Our task is, perhaps, a relatively easier one, for we have only to apply the law as Congress has written it. What Congress deemed a proper balancing of the equities as between debtor and cred-

itor ... it has enacted in ... the Bankruptcy Code. It is not for the courts to restrike that balance according to their own lights.

The bankruptcy system, and the "fresh start" policy are inextricably tied to the principal of "finality." Finality, in turn, is embodied in the multitude of bar dates and deadlines prescribed within the Code. Indeed, many of those deadlines operate to the debtor's benefit and give effect to the "fresh start," i.e., the 30–day deadline for objecting to exemptions prescribed in Rule 4003(b), the 60–day deadline for objecting to the discharge prescribed in Rule 4004(a), and the 90–day deadline for creditors to file a proof of claim prescribed in Rule 3002(c). As the Supreme Court observed its landmark decision protecting the debtor's exemption rights (through strict interpretation of section 522(*l*) and Rule 4003(b)), "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (observing that the court has no authority to limit the finality of section 522(*l*) to exemptions filed in good faith). The Debtors' argument runs completely counter to the notion of finality. The Debtors take the position that there is no deadline for amending and claiming exemptions and that they should never be bound to the exemptions they did claim.

Based on the plain language of section 522(b), the court concludes that a debtor's right to claim an exemption of scheduled property terminates upon closure of the bankruptcy case. No other interpretation is compatible with the rest of the Bankruptcy Code.

### The Debtors Were Not Entitled to Amend Their Schedules After Closure of the Case Without Court Approval.

The Federal Rules of Bankruptcy Procedure contemplate liberal amendment of bankruptcy pleadings at any time *before the case is closed.*[8] However, a debtor's latitude in amending schedules is subject to certain judge-made exceptions. For example, if a party objecting to an amended exemption can show bad faith or prejudice, the amendment may be disallowed. *See In re Arnold*, 252 B.R. 778, 784 (9th Cir. BAP 2000). Bad faith is usually based on the debtor's attempt to hide assets. *Id.* at 785. Prejudice does not consist of mere delay, nor the fact that the exemption might be allowed after amendment. *Id.* at 787. A creditor may be prejudiced when it suffers actual economic loss due to a delay in claiming the exemption. *Id.*

A distinction must be drawn between the right to amend as "a matter of course" prior to closing and the requirements for amendment after a case is closed. Neither the Bankruptcy Code nor the Rules address the standards for amending the schedules after the case is closed. Relying on a 1983 bankruptcy court decision, a leading treatise suggests that a debtor may have to show excusable neglect pursuant to Rule 9006(b)(1). *9 Collier on Bankruptcy* [15th Ed. Revised], ¶ 1009.02[3], pg. 1009–7.

The request to amend schedules is often included within the debtor's request to reopen the case. *See, e.g., Beezley*, 994 F.2d 1433 (affirming the lower courts' denial of debtor's motion to reopen based on the futility of amending the schedules to add omitted creditors in a no asset, no bar

---

**8.** Rule 1009(a) provides in pertinent part: A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.

Chapter 7 case). However, the act of re-opening a case is virtually ministerial and should not be coupled with extraneous issues. *See Menk,* 241 B.R. at 915–17. While a bankruptcy court may treat the request to reopen a case as a routine matter, that reopening does not obviate the need for judicial review of the collateral issues, such as the need to file amended schedules.

 The requirement for court approval of amended pleadings in a reopened case effectively shifts the burden to the debtor to justify the proposed amendment. Prior to closing, a debtor has an unfettered right to amend the schedules and any party opposed to the amendment must object appropriately. The bankruptcy court has no discretion to disallow the amendments subject to limited judicial exceptions. *Arnold,* 252 B.R. at 784. Reallocation of the burden from third parties to the debtor permits the court to consider the impact of the amendments, which may no longer be made "as a matter of course" after the case is closed.

 A variety of issues bear on the propriety of amendment in a reopened case, including without limitation: 1) the circumstances requiring an amendment after case closing; 2) the purpose of the amendment; 3) whether bad faith exists; 4) whether prejudice to third parties will result; 5) whether a trustee should be appointed; and 6) whether further administration of the estate will be required. In response to such a properly noticed motion, the court can fashion appropriate relief depending on the facts and circumstances. The court may deny a request to amend the schedules. Indeed, the court

may deny the antecedent motion to reopen the case, if no "legally relevant" purpose would be served by the amendment. *Beezley,* 994 F.2d. at 1437.

The requirement for court approval ensures that certain procedural safeguards are met. For instance, Rule 1009(a) requires that a debtor serve the trustee and the affected entities with the amended documents. Depending on the purpose and impact of the amended schedules, the court can make an independent determination whether a trustee is needed when its permission is sought to amend the schedules. A trustee is usually not needed in a reopened case unless the schedules are amended to include additional property. If new property is disclosed and exempted, a trustee may be required to administer the new property, and/or possibly object to the new exemption.

The court may not ignore the plain language of Rule 1009(a). The court may not give effect to the "matter of course at any time" part of the Rule and disregard the term "before the case is closed" which clearly qualifies the Rule's application. Rule 1009(a) is a procedural rule that no longer applies after a case is closed. Once the case has been closed, a debtor loses the right to amend the petition and schedules without the court's permission.

 Here, the Debtors served their amended exemption schedule on the Chapter 7 trustee and on Phoenix. They did not seek prior court approval to amend their schedules and they made no showing of excusable neglect for the failure to exempt the Residence and deal with the Judgement Lien before the case was closed.[9] Phoenix did not separately object

9. The declaration of Eric Oster filed in support of the Ex Parte Application to Reopen Case states:

"At the time of filing this case and until now, neither my wife nor I were aware that certain judgment liens were recorded against our residence. We seek an order

to the amendment after it was filed, but its opposition to the Motion includes a timely objection. Had the Debtors sought permission to amend their schedules, that request would have been denied. Based on the analysis above, no legally relevant purpose would have been served by the amendment: the Residence was no longer exemptible under section 522(b), and the Residence (having revested in the Debtors) is no longer subject to administration by a reappointed trustee, even with the new exemption disallowed.

### Conclusion.

Based on the foregoing, the court finds and concludes that the Debtors were not entitled to amend their bankruptcy schedules without court approval after the bankruptcy case was closed, they were not entitled to claim a new exemption against scheduled property after the case was closed, and they were not entitled to avoid a judicial lien against that property pursuant to Code § 522(f)(1). The Debtors' motion to avoid the Judgment Lien of Phoenix Leasing Incorporated is denied. Based on the court's ruling, the court does not need to address the "waiver" issue raised by Phoenix Leasing.

from the Court allowing us to reopen our case so we may avoid the judicial liens that affect our residence."

This statement, made under penalty of perjury, is strikingly inconsistent with the notation in Schedule D relating to Phoenix's secured claim which states, "Judgment Lien to be avoided pursuant to 11 U.S.C. Section 522(f)." It is clear to the court that the Debtors knew, or should have known, about the Judgment Lien when they verified their original bankruptcy schedules.