**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br><br>JAMES W. CORBETT and<br>DAISY A. CORBETT,<br><br>        Debtors.<br>_____<br><br>DAISY A. CORBETT,<br><br>        Appellant,<br><br>v.<br><br>JAMES E. SALVEN, Chapter 7<br>Trustee; CALIFORNIA<br>CORRECTIONAL PEACE OFFICERS<br>ASSOCIATION,<br><br>        Appellees.<br>_____ | BAP No.  EC-13-1126-DJuTa<br><br>Bk. No.  08-10861-A-7<br><br><br><br><br>**M E M O R A N D U M**[1] |

Submitted Without Oral Argument on March 21, 2014[2]

Filed - April 24, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Fredrick E. Clement, Bankruptcy Judge, Presiding

Appearances:    Appellant Daisy A. Corbett pro se on brief;
D. Edward Hays and Martina A. Slocomb of Marshack
Hays LLP on brief for appellee California
Correctional Peace Officers Association; appellee
James E. Salven, Chapter 7 Trustee pro se on
brief.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] By order entered October 17, 2013, this appeal was deemed suitable for submission without oral argument. See Fed. R. Bankr. P. 8012 and Ninth Circuit BAP Rule 8012-1.

Before: DUNN, JURY and TAYLOR, Bankruptcy Judges.

This appeal concerns disputes as to who is entitled to an award of workers' compensation benefits in the approximate amount of $86,000 ("Benefits Award"). The debtor/appellant Daisy A. Corbett ("Ms. Corbett")[3] appeals two of the bankruptcy court's orders that relate to the Benefits Award: 1) the order sustaining the chapter 7 trustee's ("Trustee")[4] objection to Ms. Corbett's claimed exemption in the Benefits Award ("Exemption Order"); and 2) the order overruling her objection to the Trustee's final account and distribution report ("Final Account Order").[5]

---

[3] In her opening brief, Ms. Corbett refers to herself both as "Daisy A. Smith-Corbett" and "Daisy A. (Smith) Corbett." To further confuse matters, in her reply brief she further refers to herself as simply "Daisy A. Corbett." To end the confusion, the appeal is captioned in her name as "Daisy A. Corbett." Her chapter 7 case was filed jointly with her husband, James W. Corbett, but since the issues in this appeal relate solely to Ms. Corbett, we will make no further reference to Mr. Corbett. However, as appropriate, we do refer from time to time to the Corbetts jointly as "debtors."

[4] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[5] In the notice of appeal, Ms. Corbett, acting pro se, only referred to the Exemption Order. However, she discussed the Final Account Order as well as the Exemption Order in her Statement of Issues on Appeal and included both orders in her excerpts of record. In their briefs, the parties address both orders, and appellees raise no issue of prejudice. We note that the orders arose from proceedings at the same hearing and are related, and both orders were entered on the same date. Accordingly, we address both the Exemption Order and the Final Account Order in this disposition. See Le v. Astrue, 558 F.3d
continue...

-2-

To be blunt, the parties all have made a hash of this case. The first bankruptcy judge assigned to the case provided some guidance as to an appropriate procedural vehicle to resolve their disputes. That guidance was ignored. After substantial time had passed and the first bankruptcy judge had recused himself, a successor bankruptcy judge was faced with the task of cleaning up the mess. We VACATE and REMAND with respect to both orders.

**FACTS**

A. Ms. Corbett's workers' compensation claim

Several years prepetition, Ms. Corbett worked as a correctional officer for the California Department of Corrections and Rehabilitation. Tr. of January 30, 2013 hr'g, 29:14-16.[6] Sometime in late 1996, while on the job, she was assaulted by an

---

[5]...continue

1019, 1023 (9th Cir. 2009); Shapiro v. Paradise Valley Unified School Dist. No. 69, 374 F.3d 857, 863 (9th Cir. 2004) ("Where 'a party seeks to argue the merits of an order that does not appear on the face of the notice of appeal,' we consider two factors: (1) whether the intent to appeal a specific judgment can be fairly inferred, and (2) whether the appellee was prejudiced by the mistake."), citing Lolli v. County of Orange, 351 F.3d 410, 414 (9th Cir. 2003).

[6] Ms. Corbett only provided portions of the January 30, 2013 hearing transcript in her excerpts of record. We retrieved the entire January 30, 2013 hearing transcript from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

inmate, sustaining an injury.[7]  Tr. of January 30, 2013 hr'g, 30:3-8.  Due to her injury, Ms. Corbett became unable to work sometime in 2005.[8]

At the time she became unable to work, Ms. Corbett was a member of the California Correctional Peace Officers Association ("CCPOA"), a union for correctional officers employed by the California Department of Corrections and Rehabilition.  As a service to its members, the CCPOA established a disability benefit trust fund ("disability benefit fund").[9]  Participation in the disability benefit fund was optional for CCPOA members.

The disability benefit fund advances funds to injured CCPOA members until they receive workers' compensation benefits.  In exchange for these advances, the CCPOA is granted a statutory lien on any workers' compensation benefits received by its members.[10]  When she filed a claim for benefits through the

---

[7] At the time she sustained her injury, Ms. Corbett was working as a correctional officer at the California State Prison, Corcoran, a men's prison.  Tr. of January 30, 2013 hr'g, 29:14-24.

[8] Both debtors reported in their Schedule I that they are disabled and retired.

[9] The disability benefit fund is a self-funded employee welfare benefit plan.  The disability benefit fund is funded with premiums paid by its participants and any investment earnings.

[10] According to the CCPOA, it had a statutory lien on Ms. Corbett's workers' compensation benefits under Cal. Labor Code § 4903.  However, the CCPOA does not provide the applicable subsection of Cal. Labor Code § 4903.

Cal. Labor Code § 4903 provides, in relevant part:
continue...

-4-

disability benefit fund, Ms. Corbett signed an agreement titled, "Reimbursement Agreement and Assignment of Proceeds" ("Reimbursement Agreement").[11]

---

[10]...continue

The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i).  If more than one lien is allowed, the appeals board may determine the priorities, if any, between the liens allowed.  The liens that may be allowed hereunder are as follows:
. . .
(b) The reasonable expense incurred by or on behalf of the injured employee, as provided by Article 2 (commencing with Section 4600) and, to the extent the employee is entitled to reimbursement under Section 4621, medical-legal expenses as provided by Article 2.5 (commencing with Section 4620) of Chapter 2 of Part 2.
(c) The reasonable value of the living expenses of an injured employee or of his or her dependents, subsequent to the injury.
. . .
(f) The amount of unemployment compensation disability benefits that have been paid under or pursuant to the Unemployment Insurance Code in those cases where, pending a determination under this division there was uncertainty whether the benefits were payable under the Unemployment Insurance Code or payable hereunder; provided, however, that any lien under this subdivision shall be allowed and paid as provided in Section 4904.
(g) The amount of unemployment compensation benefits and extended duration benefits paid to the injured employee for the same day or days for which he or she receives, or is entitled to receive, temporary total disability indemnity payments under this division; provided, however, that any lien under this subdivision shall be allowed and paid as provided in Section 4904.

[11] The CCPOA included a copy of the Reimbursement Agreement
continue...

-5-

The Reimbursement Agreement provided that the disability benefits fund would pay her claims for any work-related injury or illness conditioned on the CCPOA's

> right to reimbursement up to the full extent of benefits paid by the [disability benefit fund] on the claims, in the event [Ms. Corbett] recover[s] (i) damages or proceeds . . . by award, settlement, insurance or otherwise, for medical and other expenses (regardless of how such award, settlement or otherwise is structured or itemized); or (ii) any proceeds from occupational insurance purchased by [her] employer, or provided under state workers' compensation acts, employer liability laws, or other laws providing compensation for work-incurred injuries.

The Reimbursement Agreement further provided that, in consideration of the advances given by the CCPOA, Ms. Corbett must

> repay and hereby assign to the [disability benefit fund] the proceeds of any and all recovery/ies made from any responsible party or insurer to [her] or to any person or entity on [her] behalf, to the extent of any benefits provided by the [disability benefit fund] . . . .

It also provided that, if Ms. Corbett failed to comply with the Reimbursement Agreement, "the [disability benefit fund] may offset the amount which should be reimbursed against any benefit that may otherwise be (or become), payable under the [disability benefit fund] on [her] behalf."

Ms. Corbett apparently did not reimburse the CCPOA for any of the funds advanced to her.

B.   The debtors' chapter 7 bankruptcy

On February 21, 2008, the debtors filed their chapter 7

---

[11]...continue
in its proof of claim (claim no. 11-1) filed August 1, 2011.

bankruptcy petition. They did not list Ms. Corbett's right to workers' compensation benefits as an asset on Schedule B. They also did not list any lawsuits or actions relating to Ms. Corbett's workers' compensation benefits on their statement of financial affairs ("SOFA"). They further did not claim any exemption in Ms. Corbett's right to workers' compensation benefits on their Schedule C. However, the debtors did list the CCPOA as a general unsecured creditor with a $56,658.20 claim on their Schedule F.

Shortly after the § 341(a) meeting of creditors, the Trustee filed an asset report on March 31, 2008.[12] A day later, a notice to file proofs of claim was filed, advising creditors to file their proofs of claim by July 2, 2008. The CCPOA did not file a proof of claim at that time.

After further investigation into the debtors' financial affairs, the Trustee filed a no asset report on April 16, 2008. Tr. of January 30, 2013 hr'g, 7:1-6. The debtors received their discharge on June 3, 2008. Their chapter 7 bankruptcy case closed a week later.

Ms. Corbett apparently encountered some difficulties in

---

[12] At the January 30, 2013 hearing, the Trustee explained that he initially declared the debtors' chapter 7 bankruptcy case an asset case because he "was looking at some property that was in the debtors' name, and there was – there was a bank account in Hawaii." Tr. of January 30, 2013 hr'g, 7:2-3. He also "was looking at the value of the car." Tr. of January 30, 2013 hr'g, 7:3-4.

7

recovering her workers' compensation benefits.[13]  She went before the California Workers Compensation Appeals Board to pursue her workers' compensation benefits claim against the California Department of Corrections and Rehabilitation.  Sometime in January 2011, the California Workers Compensation Appeals Board decided in Ms. Corbett's favor.[14]  The Benefits Award provided reimbursement for her medical and/or legal expenses and further medical treatment, among other things.

However, the Benefits Award provided that $85,986.90 in workers' compensation benefits would be withheld pending resolution of issues involving the CCPOA's lien claim.  According to the CCPOA, the California Workers Compensation Appeals Board questioned whether Ms. Corbett's chapter 7 discharge affected the CCPOA's lien.  It directed the CCPOA to seek an order from the bankruptcy court "clarifying that [the debtors' chapter 7] discharge [did] not affect lien rights."

The CCPOA subsequently filed a motion to reopen the debtors' chapter 7 bankruptcy case on February 7, 2011.  The bankruptcy court granted the motion to reopen, entering an order four days later ("Reopen Order").  The Reopen Order provided that the CCPOA "shall have 30 days to file an adversary proceeding pursuant to

---

[13] In a document titled "Support to Trustee's Motion to Compel Turnover of Funds" ("Non-Opposition") filed by the debtors on August 16, 2011 (docket no. 65), Ms. Corbett stated that she hired an attorney in September 2006 to help her obtain workers' compensation benefits to pay for further medical treatment.

[14] The Benefits Award later was amended to provide that the California Workers Compensation Appeals Board would retain jurisdiction over the CCPOA's statutory lien.

8

[Rule] 7001(2). If the adversary proceeding is not filed, the case may be reclosed."

The CCPOA then filed a motion titled, "Motion for Order to Clarify that Discharge Does Not Affect Liens as a Matter of Law" ("Motion to Clarify"), by means of which it sought an order from the bankruptcy court confirming that the debtors' discharge did not terminate or otherwise affect its lien rights. The Motion to Clarify alleged that, although the CCPOA had created and perfected its lien against the Benefits Award, the California Workers Compensation Appeals Board refused to determine whether the CCPOA's lien was properly perfected and valid under state law until the CCPOA received such an order. The CCPOA contended that its lien was unaffected by the debtors' discharge as the debtors had not taken any steps to invalidate the lien in their bankruptcy case.

The Motion to Clarify also stated that the CCPOA was not seeking a determination as to the validity, priority or extent of its lien, because the California Workers Compensation Appeals Board was the proper forum to decide those issues. The Motion to Clarify further stated that the CCPOA was not seeking a dischargeability determination, acknowledging that Ms. Corbett's personal liability on the debt owed to the CCPOA had been discharged.

The debtors opposed the Motion to Clarify, arguing that the bankruptcy court could not issue an order pursuant to the CCPOA's request. They maintained that because the issues involving the Benefits Award still were pending before the California Workers Compensation Appeals Board, such an order would constitute an

9

"advisory opinion" because there was no live case or controversy before the bankruptcy court. Moreover, the debtors asserted that the issues regarding the CCPOA's lien were not ripe for adjudication by the bankruptcy court because the California Workers Compensation Appeals Board still had not determined that the CCPOA had properly perfected its lien under state law. Finally, the debtors contended that, contrary to its assertions, the CCPOA was not seeking a "comfort" order – a confirmation that the debtors' discharge did not affect its lien. Rather, it was requesting a determination on the nature, extent or validity of its lien, an issue that must be addressed in an adversary proceeding pursuant to Rule 7001.

The bankruptcy court held a hearing on the Motion to Clarify on March 23, 2011. It denied the Motion to Clarify without prejudice to filing an adversary proceeding for declaratory relief. Tr. of March 23, 2011 hr'g, 14:12-13. The bankruptcy court stated that the CCPOA was seeking "declaratory relief as to whether or not . . . the prepetition contract to – that [gave] rise to the lien survived the bankruptcy discharge and would attach to an asset that didn't come into existence until postpetition." Tr. of March 23, 2011 hr'g, 13:2-5. The bankruptcy court therefore advised the CCPOA that it would "require [the CCPOA] to file an adversary proceeding for declaratory relief on that issue." The bankruptcy court stressed that it was "only going to litigate the issue whether the prepetition contract [rode] through – can ride through and attach to postpetition assets." Tr. of March 23, 2011 hr'g, 14:23-25. The bankruptcy court also advised the parties that it intended to

10

abstain from determining whether the CCPOA properly perfected its lien. Tr. of March 23, 2011 hr'g, 14:21-22.

The bankruptcy court did not enter an order on the Motion to Clarify. Instead, it entered civil minutes (docket no. 49) setting forth its determinations. Unfortunately, the civil minutes neither mentioned the requirement for an adversary proceeding, designated the party responsible for its filing, nor set a deadline for its filing.

Following the hearing on the Motion to Clarify, the bankruptcy court reappointed the Trustee pursuant to the United States Trustee's request.

On July 27, 2011, the Trustee filed a motion to compel the California Workers Compensation Appeals Board to turn over the Benefits Award that it held ("Motion to Compel"). The stated purpose of the Motion to Compel was to bring the Benefits Award into the bankruptcy estate so that the bankruptcy court could determine who owned it: the bankruptcy estate, the debtors or the CCPOA. Neither the debtors nor the CCPOA opposed the Motion to Compel.[15]

Following a hearing on the Motion to Compel, the bankruptcy court entered an order ("Turn Over Order") directing the California Workers Compensation Appeals Board to turn over the Benefits Award. The Turn Over Order directed the Trustee to hold the funds "in a blocked account until final disposition is approved by further order of this court." The bankruptcy court

[15] The debtors filed their Non-Opposition on August 16, 2011 (docket no. 65). The CCPOA filed a notice of non-opposition to the Motion to Compel (docket no. 60) on August 25, 2011.

11

clearly intended that the Benefits Award funds would not be released for distribution until after resolution of the dispute between the CCPOA and Ms. Corbett.  Despite the bankruptcy court's colloquy with the parties at the hearing on the Motion to Clarify and the language in the Turn Over Order directing the Trustee to hold the Benefits Award funds in a blocked account until resolution by the court as to proper disposition of the funds, no adversary proceeding ever was filed by the CCPOA to obtain the necessary decision from the bankruptcy court.  Nor was an interpleader action filed by the Trustee.

Instead, on August 1, 2011, the CCPOA filed a proof of claim in the amount of $85,986.90, all of which was characterized as secured, based on a "lien on workers' compensation benefits."  No objections were filed to the CCPOA's proof of claim.

After the Motion to Compel hearing, the Trustee did little in the debtors' bankruptcy case, except to obtain the bankruptcy court's approval to employ accountants and to withdraw the no asset report ("Withdrawal")(docket no. 83).  He did note in the Withdrawal that he collected funds "relating to an undisclosed asset" and that, to date, the debtors had "neither amended to disclose the [asset] nor [had they] claimed any exemption therein."  The proof of service for the Withdrawal reflected service on the debtors at their address as listed on the bankruptcy court docket.

Although the Trustee withdrew the no asset report, he did not file a new asset report.  Further, no new deadline was set for filing proofs of claim.

C.    The debtors' objection to the Trustee's Final Account

On July 17, 2012, the Trustee filed his final report ("Trustee Final Report")(docket no. 85).  The Trustee indicated that he realized gross receipts of $85,986.90, i.e., the Benefits Award.  After paying $770.55 in bank service fees and $182.58 in administrative expenses, he had a balance of $85,033.77.  The Trustee disclosed that he would distribute $76,202.18 to the CCPOA on its secured claim, which would leave a balance of $8,831.59.  The balance then would be paid to the Trustee for his fees and costs and for his accountants' fees.[16]  The Trustee indicated that there would be no distribution to the general unsecured creditors on their claims.[17]

Also on July 17, 2012, the Trustee filed a notice of the Trustee Final Report ("Trustee Final Report Notice")(docket no. 86).  Through the Trustee Final Report Notice, the trustee advised "any person wishing to object to any fee application that has not already been approved or to the [Trustee] Final Report, must file a written objection within 21 days from the mailing of this notice, together with a request for a hearing and serve a copy of both upon the Trustee . . . ."  The Trustee Final Report Notice further provided that "[i]f no objections are filed, the Court will act on the fee application and the trustee may pay dividends pursuant to [Rule] 3009 without further order of the Court."

---

[16] The Trustee requested $7,549.35 in fees and $254.24 in expenses.  He also requested $1,028 for his accountants' fees.

[17] The allowed general unsecured claims totaled $115,593.06.

13

On the same day, an order was entered ("Objection Deadline Order")(docket no. 87), fixing the deadline for objections to the Trustee Final Report at August 9, 2012.[18]

According to the proofs of service, the Trustee Final Report, the Trustee Final Report Notice and the Objection Deadline Order all were mailed to the debtors at their address as listed on the bankruptcy court docket. No objections were filed to the Trustee Final Report.

On August 10, 2012, the bankruptcy court entered an order ("Trustee Fee Order")(docket no. 91) authorizing the Trustee to pay his fees and expenses and his accountants' fees. On October 23, 2012, the Trustee filed his final account and distribution report ("Trustee Final Account")(docket no. 92). He reported that all funds on hand had been distributed pursuant to the Trustee Final Report.

On November 21, 2012, the debtors filed an objection to the Trustee Final Account ("Final Account Objection"), in which they alleged that the CCPOA's proof of claim was false. Specifically, the debtors asserted that: 1) the CCPOA did not indicate whether its claim included interest or arrears; 2) the CCPOA falsely stated that its claim arose from money loaned, even though it actually arose from contractual insurance; 3) at the time the debtors filed for bankruptcy, the amount owed to the CCPOA was $56,658.20, not $85,986.90; 4) the CCPOA's claim was unsecured; and 5) because the debtors scheduled the debt owed to CCPOA, it

_____

[18] That is, 21 days following the date of the notice of the Objection Deadline Order, which was mailed out on July 19, 2012.

14

had been discharged. The debtors further contended that the Trustee failed to investigate the CCPOA's proof of claim.

The Trustee responded to the Final Account Objection, arguing that the deadlines to disclose Ms. Corbett's lawsuit involving her workers' compensation benefits, to claim an exemption in the Benefits Award and to object to the Trustee Final Account all had expired. He emphasized that the Trustee Final Report Notice had been served on all parties, including the debtors, and that distributions in accordance with the Trustee Final Report had been made in accordance with the Trustee Fee Order entered by the bankruptcy court after no timely objection to the Trustee Final Report had been filed.

The CCPOA also responded to the Final Account Objection, arguing that, because the chapter 7 case was not a surplus case, the debtors lacked standing to object to final distribution. They had not shown that they were directly or adversely affected pecuniarily by the Trustee Final Account. Moreover, the CCPOA asserted that debtors' discharge did not affect the CCPOA's statutory lien. Although the debtors no longer were personally liable on the debt owed to the CCPOA, the CCPOA's lien passed through their bankruptcy, still attached to the Benefits Award.

The CCPOA also maintained that the bankruptcy court had no jurisdiction to determine the validity, priority or extent of its lien because it arose under California workers' compensation law. It further contended that the debtors failed to object timely to the Trustee Final Report. Although the deadline to object to the Trustee Final Report was August 9, 2012, the debtors did not object until November 21, 2012.

15

Finally, the CCPOA argued that, contrary to the debtors' assertions, the CCPOA did not file a false proof of claim. The claim did not include interest. The basis for perfection was the CCPOA's statutory lien under Cal. Labor Code § 4903. Therefore, even if CCPOA had not filed its proof of claim, its lien still would encumber the Benefits Award. Moreover, neither the debtors nor any other party had objected to the CCPOA's proof of claim.[19]

At the January 4, 2013 hearing on the Final Account Objection, the debtors admitted that the Final Account Objection was untimely. However, referring to the bankruptcy court's statements at the March 23, 2011 hearing, the debtors claimed that the bankruptcy court had determined that the CCPOA had only a contract claim, not a lien. The debtors also contended that the CCPOA failed to file its proof of claim timely by August 2, 2008, the original claims bar deadline.

The debtors stated that they initially did not schedule Ms. Corbett's workers' compensation benefits as an asset because they were unaware that her injuries had a monetary value, given that she did not receive compensation for her work-related injuries for many years.

---

[19] The debtors filed a reply to the CCPOA's response to the Final Account Objection. The bankruptcy court declined to consider it because: 1) the debtors failed to file it timely; 2) the debtors failed to file it pursuant to the bankruptcy court's local rules; and 3) the debtors did not follow due process by allowing parties a chance to review it in advance. Tr. of January 4, 2013 hr'g, 4:6-9. However, the bankruptcy court permitted the debtors to make their arguments orally at the hearing. Tr. of January 4, 2013 hr'g, 4:9-10. The debtors repeated all of the arguments made in their reply at the hearing.

16

The debtors also pointed out that, although the bankruptcy court ordered the CCPOA to file an adversary proceeding for declaratory relief, the CCPOA failed to do so. They further alleged that although the Trustee assured the bankruptcy court that he was going to hold the Benefits Award until the disputes as to entitlement to the Benefits Award were resolved, he distributed the Benefits Award without advising the debtors or obtaining a hearing. Tr. of January 4, 2013 hr'g, 8:6-8.

The bankruptcy court declined to issue a ruling at that time, instead continuing the hearing to January 30, 2013.

D. The Trustee's objection to the debtors' exemption claim

On November 28, 2012 and December 3, 2012, respectively, the debtors amended their Schedule B to list the Benefits Award and their Schedule C to claim an exemption in the entire amount of the Benefits Award under California Code of Civil Procedure ("CCP") § 704.160.

The Trustee objected to the debtors' amended Schedule C ("Objection to Exemption") because the Trustee Final Report Notice had been served on all creditors and the debtors and the 21-day objection period had passed without any party objecting to the Trustee Final Report and because the debtors did not timely disclose and exempt the Benefits Award. The Trustee argued that the debtors' failure initially to disclose and exempt the Benefits Award should bar their ability to do so once the Benefits Award had been discovered and collected, funds were distributed and the Trustee Final Account was filed.

The debtors responded, arguing that they did not act in bad faith in omitting the workers' compensation benefits from their

17

schedules. The debtors repeated arguments made at the January 4, 2013 hearing: 1) they did not list Ms. Corbett's workers' compensation benefits as an asset initially because they were unaware that her injuries had a monetary value, and 2) although the bankruptcy court already determined that the CCPOA did not have a lien but only a contract claim, the CCPOA knowingly and fraudulently filed a secured proof of claim.

The debtors further contended that because workers' compensation benefits are exempt from chapter 7 bankruptcy proceedings under CCP § 703.140(b), such benefits are not assets of the bankruptcy estate.

The bankruptcy court set a hearing on the Objection to Exemption for January 30, 2013.

E.    The bankruptcy court's determinations on the Final Account Objection and Objection to Exemption

Approximately one month before the January 30, 2013 hearing, the bankruptcy judge who had been presiding over the debtors' bankruptcy case recused himself. Another bankruptcy judge replaced him. Unfamiliar with the issues before it, the bankruptcy court used the January 30, 2013 hearing as a means to acquaint itself with the facts and the issues. Tr. of January 30, 2013 hr'g, 37:14-15, 46:18-20, 47:22-24.

At that hearing, the bankruptcy court learned: 1) No determination had been made as to the amount of the CCPOA's lien and whether the CCPOA's lien attached or had been perfected. Tr. of January 30, 2013 hr'g, 23:6-8, 24:3-4. 24:11-12. 2) At the time she filed her chapter 7 bankruptcy petition, Ms. Corbett had received funds from the CCPOA. Tr. of January 30, 2013 hr'g,

18

33:8-11. 3) The CCPOA did not initiate the adversary proceeding because it believed, as a secured creditor, it did not need to. Tr. of January 30, 2013 hr'g, 39:10-11. Instead, the CCPOA filed a proof of claim, submitting evidence showing that it had a lien against Ms. Corbett's workers' compensation benefits. Id. 4) The Trustee did not place the Benefits Award funds into a blocked account pursuant to the Turn Over Order. Tr. of January 30, 2013 hr'g, 12:18-25, 13:1-4, 13:20-24. When asked why he did not place the funds into a blocked account, the Trustee admitted that he may not have understood what a blocked account was. Tr. of January 30, 2013 hr'g, 17:3-4, 18:3-8. The Trustee believed that it was sufficient for him to place the funds into a trust account to which only he had access. Tr. of January 30, 2013 h'rg, 12:19-24. However, the Trustee also admitted that he knew that he needed an order from the bankruptcy court to distribute the funds. Tr. of January 30, 2013 hr'g, 18:24-15, 19:1-2.

The bankruptcy court continued the hearing on both matters to February 27, 2013. At the February 27, 2013 hearing, the bankruptcy court orally issued its determinations on both the Final Account Objection and the Objection to Exemption.

Addressing the Objection to Exemption first, the bankruptcy court acknowledged that Rule 1009(a) allows a debtor to amend her schedules as a matter of course at any time, even upon reopening of the bankruptcy case. Tr. of February 27, 2013 hr'g, 4:4-6. Citing Goswami v MTC Distrib. (In re Goswami), 304 B.R. 386, 393 (9th Cir. BAP 2003), the bankruptcy court noted, however, that the fact that a debtor can amend her Schedule C in her reopened bankruptcy case did not mean that she had an absolute right to

19

have the amended claim of exemption allowed. Tr. of February 27, 2013 hr'g, 4:13-17.

Citing Arnold v. Gill (In re Arnold), 252 B.R. 778, 785-89 (9th Cir. BAP 2000), the bankruptcy court stated that an amended claim of exemption may be disallowed on a showing of prejudice to creditors or third parties, including the chapter 7 trustee. Tr. of February 27, 2013 hr'g, 4:18-22. The bankruptcy court recognized that the Trustee was objecting to the amended Schedule C on the basis of prejudice. Tr. of February 27, 2013 hr'g, 4:25, 5:1.

Citing In re Shethi, 389 B.R. 588, 605 (Bankr. N.D. Ill. 2008), the bankruptcy court explained that the appropriate inquiry in determining whether the debtor's amended Schedule C caused prejudice hinged on whether "a party [had] changed its position in reliance on the original claim and would be adversely impacted by an amendment thereto."[20] Tr. of February 27, 2013 hr'g, 5:10-12. The bankruptcy court then sustained the Trustee's Objection to Exemption, finding that the amended Schedule C was prejudicial to the Trustee:

> Here the trustee's change in position and reliance on the debtors' failure to exempt the compensation proceeds earlier is clear. Because the debtor[s] never claimed the exemption [in the Benefits Award], the trustee determined that CCPOA had lien rights to the proceeds over the estate and, accordingly, distributed the proceeds to CCPOA as part of his statutory duty to administer the estate.
> If the debtor[s] had claimed an exemption . . . in a timely manner, that would have established the debtors' standing to object to CCPOA's claim since the

---

[20] The bankruptcy court in Shethi cited 9 Collier on Bankruptcy ¶ 1009.02[1] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2007) for this proposition.

20

. . . exemption proceeds would have set forth the debtors' interest in the property, in addition to the estate's and CCPOA's interests, and that would have at least halted . . . the trustee's proposed distribution until the debtors' claim objection was resolved.

Because the proceeds have now been administered and distributed, this would cause prejudice to the trustee if the amendment is allowed.

Tr. of February 27, 2013 hr'g, 5:17-21, 6:1-7.

The bankruptcy court pointed out that the debtors had ample time to amend their exemptions but did not do so until nearly four months after the Trustee informed them of his intent to distribute the funds from the Benefits Award to the CCPOA in the Trustee Final Report. Tr. of February 27, 2013 hr'g, 6:8-11.

The bankruptcy court noted that the debtors had been forewarned even earlier when the Trustee withdrew the no asset report, which informed the debtors that he had collected the Benefits Award as property of the estate to be administered to creditors. Tr. of February 27, 2013 hr'g, 6:12-18. The bankruptcy court then quoted the Withdrawal: "[the debtors have] neither amended to disclose the Workers' Compensation claim, nor [have they] claimed an exemption." Tr. of February 27, 2013 hr'g, 6:20-22. Such notice, the bankruptcy court reasoned, "should have signaled to the debtors that they must act to protect their interest before the trustee did what he proposed to do." Tr. of February 27, 2013 hr'g, 6:23-25. The bankruptcy court ultimately determined that "it [was] simply too late for the debtors to do anything," once the Trustee distributed the funds from the Benefits Award, on the assumption that the debtors would not amend their claimed exemptions. Tr. of February 27, 2013 hr'g, 7:1-4. It therefore sustained the Trustee's Objection

21

to Exemption.

The bankruptcy court stated that it did not find credible the Trustee's explanation of his understanding of his obligations under the Turn Over Order. Tr. of February 27, 2013 hr'g, 13:1-4. However, it found that the Trustee's noncompliance with the Turn Over Order "made no difference in this case . . . because the result was the same."[21] Tr. of February 27, 2013 hr'g, 13:9-10.

The bankruptcy court then turned to the debtors' Final Account Objection, which it overruled on three grounds. First, the debtors lacked standing to object to the distribution because they would not have benefitted from the change in the Trustee's proposed final distribution. Tr. of February 27, 2013 hr'g, 8:22-24. The bankruptcy court reasoned that, even if their objection was sustained, the debtors would not be entitled to the funds from the Benefits Award distributed to the CCPOA. Tr. of February 27, 2013 hr'g, 8:11-14. Instead, because the debtors' amended claim of exemption was disallowed, the general unsecured creditors would be entitled to the Benefits Award funds. Tr. of February 27, 2013 hr'g, 8:15-19.

Second, even if the debtors did have standing, they had waived the right to object to the Trustee Final Account when they filed their objection <u>after</u> the deadline had passed, where they

---

[21] The bankruptcy court admonished the Trustee, warning him that "it [was] imperative that [he] follow the terms of the [bankruptcy court's] order specifically. And if [he was], in fact, unclear, [he] should seek clarification." Tr. of February 27, 2013 hr'g, 13:15-18.

22

had received the Trustee Final Report Notice. Tr. of February 27, 2013 hr'g, 9:1-25, 10:1-13. Finally, Trustee already had distributed the Benefits Award funds to the CCPOA. Tr. of February 27, 2013 hr'g, 9:4-5.

The bankruptcy court entered both the Exemption Order and the Final Account Order on March 5, 2013. Ms. Corbett timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES[22]

1) Did the bankruptcy court err in sustaining the Trustee's objection to the debtors' amended claim of exemption in the Benefits Award?

2) Did the bankruptcy court err in overruling the debtors' objection to the Trustee Final Account?

## STANDARDS OF REVIEW

We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. <u>Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)</u>, 671 F.3d 1011, 1019 (9th Cir. 2012).

---

[22] The debtors list ten issues on appeal, but we have distilled their essence down to two.

We review de novo questions involving a debtor's right to claim exemptions. Goswami v. MTC Distrib. (In re Goswami), 304 B.R. at 389; Arnold v. Gill (In re Arnold), 252 B.R. at 784.

We review the bankruptcy court's overruling of an objection to a trustee's final report or final accounting for abuse of discretion. See, e.g., Stasz v. Gonzalez (In re Stasz), 2011 WL 6934442 (9th Cir. BAP Nov. 30, 2011). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its fact findings are illogical, implausible or without support from evidence in the record. Trafficschool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

A.   The Exemption Order

Courts within the Ninth Circuit have held that a debtor may amend her schedules, including the schedule of claimed exemptions, at any time absent a showing of bad faith or prejudice to third parties. See Rule 1009(a); Martinson v. Michael (In re Michael), 163 F.3d 526, 529 (9th Cir. 1998); Goswami v. MTC Distrib. (In re Goswami), 304 B.R. 386, 392-93 (9th Cir. BAP 2003); Magallanes v. Williams (In re Magallanes), 96 B.R. 253, 256 (9th Cir. BAP 1988). If a court finds that the debtor's amendment was prejudicial to third parties, the court may deny leave to amend. See Michael, 163 F.3d at 529.

In this case, the bankruptcy court did not find that the debtors filed their amended exemption claim in bad faith. Instead, it based its decision on the lateness of the exemption

24

claim and the resulting prejudice, primarily to the Trustee, who acted and changed his position in reliance on the debtors' failure to claim the exemption earlier. The Trustee paid his own compensation and costs and distributed the balance of the Benefits Award to the CCPOA because he determined that the CCPOA's lien rights were superior to the estate's interest in the Benefits Award.

However, as recognized by the bankruptcy court, "[s]imple delay in filing an amendment does not constitute prejudice, nor does prejudice occur because a claimed exemption, if untimely, would be granted," citing Andermahr v. Barrus (In re Andermahr), 30 B.R. 532, 534 (9th Cir. BAP 1983). This Panel considered the issue of prejudice to the trustee in the event that a late amended exemption claim is allowed in Arnold v. Gill (In re Arnold), 252 B.R. 778 (9th Cir. BAP 2000). In Arnold, the debtors filed amended Schedules B and C to claim an exemption in proceeds from the settlement of an undisclosed personal injury claim more than three years after their chapter 7 filing. Id. at 781-82. The trustee argued that allowing the amended exemption claim would jeopardize his statutory compensation allowable under § 326. Id. at 788. While recognizing the possibility of prejudice to the trustee in such circumstances, this Panel concluded that "such prejudice can be mitigated or eliminated by conditioning allowance of the amended exemption on payment of trustee's and counsel's fees and costs from assets not otherwise

25

available to the estate."[23]  Id. at 789.

Such mitigation of harm can be accommodated on remand in further proceedings before the bankruptcy court and is particularly appropriate in this case because if the Trustee had honored the "blocked account" requirement of the Turn Over Order and its purpose, as discussed more fully infra, we would not be here.[24]  As in Arnold, we conclude that prejudice to the Trustee in the circumstances of this case does not warrant denial of

---

[23] We recognize that the Supreme Court recently decided that the provisions of the Bankruptcy Code do not allow surcharge of a debtor's homestead exemption to pay administrative expenses, such that the mitigation of prejudice may now be more difficult.  See Law v. Siegel, 134 S. Ct. 1188 (2014).

[24] Issues with respect to the Trustee's compensation and reimbursement of expenses raise some questions in our minds that have not been addressed by the parties:  If the Benefits Award funds represented no more than the actual total of payments made by the CCPOA to Ms. Corbett, without interest or costs, and the Trustee was convinced that the CCPOA had a valid security interest in the Benefits Award, on what basis did the Trustee claim that his compensation and costs could be paid from the CCPOA's collateral?  Typically in such situations, where the trustee is paid from a secured creditor's collateral funds, there is an agreement between the trustee and the secured creditor to allow a "carve out" for the trustee's compensation and costs, perceived as beneficial to the secured creditor because the secured creditor can rely on the trustee to collect and distribute the funds.  However, again typically, such an agreement is disclosed and approved by the bankruptcy court, following such notice and opportunity to request a hearing as is appropriate in the circumstances.  No such agreement or arrangement is reflected in the record before us.  Perhaps the Trustee simply relied on the CCPOA's failure to object to the Trustee Final Report by the deadline and treated that failure to object as consent, following the bankruptcy court's entry of the Trustee Fee Order.  Resolving these issues on remand may prove interesting.

Ms. Corbett's amended exemption claim.

Neither does prejudice to the position of the CCPOA. The CCPOA received the balance of the Benefits Award funds, but it cannot be a surprise to the CCPOA that Ms. Corbett has asserted an unresolved claim to the funds. Under CCP § 704.160(a), "before payment, a claim for workers' compensation or workers' compensation awarded or adjudged is exempt without making a claim . . . . [A]fter payment, the award is exempt." (Emphasis added.) There are exceptions to the exemptions provided for in CCP § 704.160(a) (see, e.g., CCP § 704.160(a) and (b)), but whether any of them apply in the circumstances of this case has not been adjudicated.

Based on the terms of the Turn Over Order, the parties and the bankruptcy court expected that further proceedings would be required to establish who among the estate, the CCPOA and Ms. Corbett would be entitled to the Benefits Award funds. This Panel held in Arnold that "theoretical disappointment of expectations, without proof of actual damage," does not support a finding of prejudice to creditors. In re Arnold, 252 B.R. at 787. On remand, the CCPOA can continue to hold the Benefits Award funds until there is a determination as to who, between the CCPOA and Ms. Corbett, gets to keep them.

Ultimately, we conclude on the record in this case and based on our published precedents, that the bankruptcy court erred in sustaining the Trustee's objection to Ms. Corbett's amended exemption claim based on prejudice, and we will vacate and remand the Exemption Order for further proceedings before the bankruptcy court.

27

B.    The Final Account Order

The Final Account Order is more problematic.  The bankruptcy court overruled the Final Account Objection on three grounds: 1) the debtors' lack of standing to object; 2) the debtors' failure to file a timely objection; and 3) that all estate funds from the Benefits Award had been distributed.  As to the first ground, once the bankruptcy court had denied Ms. Corbett's amended exemption claim, she was in a position where she was raising an objection as a debtor with respect to an insolvent estate, and she had no pecuniary interest in the issue.  By vacating the bankruptcy court's order denying her amended exemption claim, we have revived her potential financial stake and her standing with respect to the Final Account Order.

With regard to the third ground, we acknowledge that all of the Benefits Award funds have been distributed by the Trustee, but only to himself and estate professionals and the CCPOA.  The funds could be retrieved, if required, from those parties in further proceedings before the bankruptcy court.[25]

As to the second ground, we recognize that Ms. Corbett filed the Final Account Objection late, months after the August 9, 2012 deadline set in the Objection Deadline Order.  However, in the confused circumstances of this case, we conclude that Ms. Corbett's delay in filing the Final Account Objection was

---

[25] We recognize that a very different situation, with a potentially different result, would be presented if the Benefits Award funds had been distributed pro rata among all of the debtors' general unsecured creditors, possibly rendering this appeal equitably moot, but that is not the situation we face here.

28

understandable and justifiable in light of her reasonable expectation, based on the terms of the Turn Over Order and the absence of an asset report in the case, that issues as to entitlement to the Benefits Award funds would be decided in further proceedings before the funds were distributed. There was no knowing waiver. By filing his Trustee Final Report and the associated notice and order, the Trustee confounded Ms. Corbett's expectations as to how entitlement to the Benefits Award would be resolved. As noted by the bankruptcy court in admonishing the Trustee with regard to his incredible interpretation of the "blocked account" language of the Turn Over Order, "this order was crafted to specifically preclude you from doing exactly what you did."

Clearly, the bankruptcy court had a means to "correct" the conundrum that resulted in this appeal: the prematurely filed Trustee Final Report. Although not articulated as such, the Final Account Objection was in substance a motion for relief from the combined impact of the Trustee Final Report and the Trustee Fee Order pursuant to Civil Rule 60(b)(1), applicable in the contested matters before the bankruptcy court pursuant to Rule 9024, where there is no other conclusion in the face of the Turn Over Order than that the Trustee Final Report was filed by mistake.

While a motion filed under Civil Rule 60(b) is addressed to the discretion of the bankruptcy court, "there are some situations so extreme that the result is foreordained and it would be an abuse of discretion . . . to deny the relief." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

29

Practice and Procedure § 2857 (3d ed. 2012). This is one such situation. The bankruptcy court chided the Trustee at length for his failure to follow both the intent and the language of the Turn Over Order. Resolution of the dispute between Ms. Corbett and the CCPOA could not be circumvented merely because the Trustee believed the funds he held under the Turn Over Order belonged to the CCPOA. That determination was judicial in nature, and not the Trustee's to make.

Unlike the bankruptcy court, we cannot conclude on this record that "there was no harm in this case." In these circumstances, we determine that it was error to overrule the Final Account Objection. Further proceedings will be required so that the issues relating to entitlement to the Benefits Award funds can be resolved before the bankruptcy court.

**CONCLUSION**

For the foregoing reasons, we VACATE the Exemption Order and the Final Account Order and REMAND this case for further proceedings consistent with this disposition.